IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) ) Chapter 11 |
| GENON ENERGY, INC., *et al.*,[1] | ) ) Case No. 17-33695 (DRJ) |
| Debtors. | ) ) (Jointly Administered) ) |

**DEBTORS' <u>EXPEDITED</u> MOTION FOR ENTRY OF AN ORDER
(I) APPROVING A GLOBAL SETTLEMENT AND (II) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091). The Debtors' service address is: 804 Carnegie Center, Princeton, New Jersey 08540.

KE 49866800

> **THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EXPEDITED RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.  A HEARING WILL BE HELD ON THIS MATTER ON NOVEMBER 13, 2017, AT 9:00 AM (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TX 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion").

### Relief Requested

1. The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, (a) approving a global settlement (the "Settlement") by and between Debtor GenOn Energy, Inc. ("GenOn"), Debtor GenOn Americas Generation, LLC ("GAG"), and the Consenting Noteholders and (b) granting related relief.

### Jurisdiction, Venue, and Procedural Background

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this

2

Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested in this Motion are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 9019, and rule 9013-1(b) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

4. On June 14, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 4]. As of the date hereof, no party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committee has been appointed under section 1102 of the Bankruptcy Code. A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Mark A. McFarland in Support of Chapter 11 Petitions and First Day Motions*, filed on June 14, 2017 [Docket No. 19].

## Background and the Settlement Agreement[2]

5. As the Court is aware, when the Debtors filed their chapter 11 cases in June, they were a party to the Restructuring Support Agreement that had the support of over 90% of their funded debt constituents and NRG Energy, Inc. ("NRG"). Shortly after the Petition Date, the Debtors filed a plan to implement a restructuring that contemplated a confirmation hearing as

---

[2] Capitalized terms used but not defined in this Motion shall have the meanings ascribed to them in the Plan (as defined herein).

3

early as September. When the Debtors, based on negotiations with their stakeholders, decided to explore whether one or more sale transactions could be value maximizing, the Debtors' stay in chapter 11 became knowingly lengthier and potentially more onerous for certain of their Restructuring Support Agreement counterparts. The exploration of potential sale transactions is intended to maximize distributions to creditors and the future equity value of the reorganized company; however, it undeniably changed the landscape of the deal from the perspective of the Consenting GAG Noteholders and the Consenting GenOn Noteholders.

6. Yet, despite these changes, the Debtors, NRG, and the Consenting Noteholders have been able to remain within the confines of the Restructuring Support Agreement while progressing the cases toward emergence. Continued dialogue, cooperation, and negotiations among all stakeholders has helped these cases remain consensual, even as the M&A process takes shape and initial bids on potential Third-Party Sale Transactions are being reviewed.

7. In connection with their review of the Phase I bids in connection with potential Third-Party Sale Transactions, the Debtors determined to continue exploring M&A transactions through a Phase II bid process. However, the Debtors and the Consenting Noteholders realized that for the M&A process to continue in a value-maximizing manner, certain milestones in the Restructuring Support Agreement would need to be extended. Of greatest significance was the current December 13, 2017 deadline to emerge from bankruptcy under the Restructuring Support Agreement. However, extending that deadline had implications for each of the Consenting GAG Noteholders and the Consenting GenOn Noteholders.

8. Under the *Second Amended Joint Chapter 11 Plan of Reorganization of GenOn Energy, Inc. and its Debtor Affiliates* (as may be modified, amended, or supplemented from time to time, the "Plan") as filed, each Holder of an Allowed GAG Note Claim will receive, subject to

the charging lien of the GAG Notes Trustee: (i) Cash in an amount equal to 92% of the principal amount and accrued interest as of the Petition Date of such Allowed GAG Notes Claim; (ii) its Pro Rata share of the GAG Notes Cash Pool; (iii) cash in an amount due under the GAG Notes Indenture to the GAG Notes Trustee, and any applicable paying agent, on account of fees and expenses; and (iv) payment of the Restructuring Expenses (the foregoing (i)-(iv), the "<u>GAG Notes Treatment</u>"). *See* Plan Art. III.B.5. The Holders of GenOn Notes Claims, on the other hand, are receiving, among other things, 100% of the New Common Stock of Reorganized GenOn, subject to certain dilutions.

9. Therefore, as the future equity owners of Reorganized GenOn, the Holders of the GenOn Notes are the ultimate beneficiaries of any value created through chapter 11 asset sales under the Plan. In contrast, the GAG Notes Treatment reflects payments in Cash, which is static, regardless of any increase in reorganized equity value at GenOn. An extension of the emergence milestone, therefore, required the Holders of GAG Notes Claims to consent to a delay in receiving their Plan distribution. As a result, the Debtors and both sets of noteholders explored paths towards extending the emergence milestone that would appropriately compensate the Holders of GAG Notes Claims for any delay.

10. To that end, on October 30, 2017, the Debtors and the Consenting Noteholders entered into a consent agreement (the "<u>Consent Agreement</u>") extending certain milestones contained in the certain Restructuring Support Agreement, substantially in the form annexed as **Exhibit 1** to **Exhibit A** attached hereto. As described herein, the Consent Agreement is the result of extensive negotiations that will provide the Debtors with continued flexibility to pursue various sale transactions while preserving the consensual Plan treatment for Holders of GAG Notes Claims.

11. Specifically, the Consent Agreement, among other things, extends the milestone in the Restructuring Support Agreement by which the Effective Date must occur so the Debtors can pursue potential sale transactions in chapter 11 and have sufficient time to ensure that the drafting of definitive documentation and negotiation of the details of each transaction are value-maximizing. Under the current Restructuring Support Agreement, the Effective Date must occur by *December 13, 2017* or *February 19, 2018*, if regulatory approvals are still pending. The Consent Agreement extends these deadlines to *June 30, 2018* and *September 30, 2018*, respectively (the "Extended Effective Dates"). In exchange for the Extended Effective Dates, the Consent Agreement requires the Debtors to seek entry of an order (the "9019 Order") that provides for the following:

- granting the Holders of Allowed GAG Note Claims an Administrative Claim against GenOn in an amount equal to the value of the treatment afforded to Holders of Allowed Class 5 GAG Notes Claims under the Plan with an amendment to subpart (b) of the definition of GAG Notes Cash Pool contained in the Plan as follows: (b) beginning on the date that is 180 days after the Petition Date, liquidated damages accruing at an annual rate of 9% of the aggregate principal amount of GAG Notes outstanding plus accrued interest as of the Petition Date (the "GAG Payment"), which amounts shall be payable monthly in cash in advance by no later than the first business day of each month (provided that any such liquidated damages accrued in the month of December 2017 shall be paid on January 2, 2018) (the "GAG Administrative Claim");

- allowing the GAG Administrative Claim irrespective of whether the Plan is consummated; *provided*, however, that such GAG Administrative Claim shall be deemed satisfied in full upon receipt by such Holders of GAG Notes Claims of the treatment afforded to Holders of Allowed Class 5 GAG Notes Claims under the Plan, provided that the liquidated damages described in the 9019 Order were paid pursuant to the 9019 Order (such payment, the "GAG Payment in Full"), whether upon consummation of the Plan or at any time before the Effective Date, and from any source, with such payment to be made by the Debtors, in consultation with the GenOn Steering Committee;

- requiring the Debtors to pay the Holders of Allowed Class 5 GAG Notes Claims the GAG Payment monthly in cash in advance by no later than the first business day of each month (provided that any such liquidated damages accrued in the month of December 2017 shall be paid on January 2, 2018); and

- ordering that, notwithstanding anything to the contrary in any other agreement or order:

(i)     upon entry of the 9019 Order, any consent, approval, amendment, waiver, consultation or termination rights under the Plan or the Restructuring Support Agreement granted to the Holders of GAG Notes (including, without limitation, in their capacity as Consenting GAG Noteholders, the GAG Steering Committee or the Requisite Consenting Noteholders, and solely with respect to their GAG Notes Claims) shall be limited to events, occurrences, or omissions in connection with or related to, including any motion filed by the Debtors or the GenOn Steering Committee seeking,

    (a)     any alteration of the treatment afforded to Holders of Allowed Class 5 GAG Notes Claims under the Plan or the timing of the payment of any such treatment,

    (b)     the invalidation, disallowance, subordination, or untimely payment of the liquidated damages portion, of the GAG Administrative Claim, or

    (c)     any alteration or modification to the Extended Effective Dates;

(ii)     the Debtors are authorized, in consultation with the GenOn Steering Committee, to make the GAG Payment in Full, upon consummation of the Plan or at any time before the Effective Date; and

(iii)     upon the GAG Payment in Full, (x) the Holders of GAG Notes (including, without limitation, in their capacity as Consenting GAG Noteholders, the GAG Steering Committee or the Requisite Consenting Noteholders, and solely with respect to their GAG Notes Claims) shall have no further consent, approval, amendment, waiver, consultation or termination rights under the Plan or the Restructuring Support Agreement, and (y) the GAG Escrow Amount shall be released.

12.     The Consent Agreement also provides that each of the Consenting GenOn Noteholders' and the Consenting GAG Noteholders' consent to the Extended Effective Dates is contingent upon the Bankruptcy Court's entry of (a) the 9019 Order substantially contemporaneously with the Confirmation Order no later than December 14, 2017 and (b) entry of the Confirmation Order substantially contemporaneously with the 9019 Order, *provided*, that, the 9019 Order may be entered at any time prior to the Confirmation Order if the GenOn Steering Committee consents to such earlier entry.

13.     Essentially, the GAG Administrative Claim provided to the GAG Consenting Noteholders preserves the carefully negotiated, and agreed-upon treatment of the GAG Notes

7

Claims under the Plan and RSA, while also providing those Noteholders with greater assurance that they will receive the benefit of their bargained-for-treatment in these cases, despite the risks associated with an effective date that could be delayed approximately 6 months as compared to the current RSA.

14. In accordance with the Consent Agreement, GenOn and GAG (and their respective independent directors) have agreed to the Settlement, which ensures that the Debtors continue to have a consensual path out of chapter 11, including with sufficient time as may be necessary to pursue potential value-maximizing sale transactions.

## Basis for Relief

15. Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

16. "To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) ("[s]ettlements are favored [in bankruptcy]"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006) (same); *In re Adelphia Commc'n Corp.*, 361 B.R. 337, 348 (Bankr. D. Del. 2007) (same). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

8

17. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, "approval of a compromise is within the sound discretion of the bankruptcy court." *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Jackson Brewing*, 624 F.2d at 602–03.

18. In *Jackson Brewing*, the United States Court of Appeals for the Fifth Circuit set forth a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors the Court must consider are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise. *See Age Ref. Inc.*, 801 F.3d at 540 (internal citations omitted).

19. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.; Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

20. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the

9

court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).[3]

21. Further, the Bankruptcy Code authorizes the use of property outside the ordinary course of business with court approval and a valid business reason. Specifically, the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363(b)(1). It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); 441 B.R. 813, 830 (Bankr. S.D. Tex. 2010); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Apr. 29, 2014) (stating that, under the business judgment standard, once the debtor presents "a reasonable basis for its business decisions . . . courts will generally not entertain objections to the debtor's conduct . . . .").

---

[3] Further, under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Authorizing the Debtors to proceed with this Order, in accordance with the Consent Agreement, falls squarely within the spirit of Rule 9019, if not the letter, as well as the Bankruptcy Code's predilection for compromise. Thus, to the extent necessary, section 105(a) relief is appropriate in this instance and would best harmonize the settlement processes contemplated by the Bankruptcy Code.

22. Based on the foregoing considerations, the Debtors respectfully submit that the Settlement embodied in the Consent Agreement represents a fair and reasonable compromise that is in the best interest of the Debtors' estates. The Debtors have determined in their reasonable business judgment that the benefits of the Settlement outweigh their costs. In fact, the GAG Administrative Claim being created has minimal costs to the estate because its main purpose is to solidify the *current* Plan treatment for Holders of GAG Notes Claims while allowing the *timing* of a portion of their distribution to begin at an earlier date. Further, nothing in this Settlement negatively impacts the recovery available to Holders of General Unsecured Claims under the Plan who will remain unimpaired. Moreover, the Settlement preserves substantial creditor support for the comprehensive restructuring as embodied in the Restructuring Support Agreement, avoids the expense, delay, and distraction of modifying and resoliciting the Plan, will not require the Debtors to expend additional material estate resources that would not otherwise have been utilized to satisfy the Allowed GAG Note Claims under the Plan upon the Effective Date, and limits the Consenting GAG Noteholders' consent rights to allow the Debtors and future owners of Reorganized GenOn to make business judgment decisions in connection with the M&A process without consultation from constituents who do not share a similar economic interest.

23. Additionally, the Settlement has the full support of the Consenting Noteholders and the independent directors at GAG and GenOn. Upon Court approval of this Motion, GenOn and GAG will carry out the terms of the Settlements, thereby satisfying a significant milestone critical to maintaining compliance with the Restructuring Support Agreement as the Debtors approach confirmation. Accordingly, the Debtors respectfully request that the Court enter the

Order and authorize the Debtors to proceed with the Settlement as such action is a reasonable exercise of the Debtors' business judgment and in the best interest of their bankruptcy estates.

## Expedited Consideration

24. In accordance with Bankruptcy Local Rule 9013-1, the Debtors respectfully request expedited consideration of this Motion. The Debtors and the Consenting Noteholders have been working in earnest for weeks on the Consent Agreement, but were not able to execute such until October 30, 2017—*i.e.*, within the past few days. Thus, certain of the most salient facts and finalized deal terms underlying the relief requested in this Motion only came into existence in the past few days. Further, the hearing to consider confirmation of the Plan is currently scheduled for November 13, 2017. The relief requested in this Motion is highly relevant to the Court's consideration of whether to confirm the Plan. The Court will be in the best position to evaluate the relief requested herein in conjunction with the Debtors' confirmation hearing. Accordingly, the Debtors respectfully submit that the Court should grant the relief requested herein on an expedited basis.

## Notice

25. The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Trust Company, as indenture trustee for the GenOn Energy, Inc. 7.875% Senior Notes due 2017, 9.50% Senior Notes due 2018, and 9.875% Senior Notes due 2020, (collectively, the "GenOn Notes"), and counsel thereto; (d) Wilmington Savings Fund Society, FSB, as successor indenture trustee for the GenOn Americas Generation, LLC 8.50% Senior Notes due 2021 and 9.125% Senior Notes due 2031, (collectively, the "GAG Notes"), and counsel thereto; (e) NRG Energy, Inc., as administrative agent under the Debtors' secured prepetition revolving facility due 2018

(the "Revolver"), and counsel thereto; (f) U.S. Bank National Association, as collateral trustee under the Revolver; (g) Davis Polk & Wardwell LLP, as counsel to the GenOn Ad Hoc Group; (h) Quinn Emanuel Urquhart & Sullivan, LLP, as counsel to the GAG Ad Hoc Group; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

## No Prior Request

26.     No prior request for the relief sought in this Motion has been made to this or any other court.


[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  November 3, 2017  
Houston, Texas

/s/ Zack A. Clement  
Zack A. Clement (Texas Bar No. 04361550)  
**ZACK A. CLEMENT PLLC**  
3753 Drummond Street  
Houston, Texas 77025  
Telephone:   (832) 274-7629  
Email:           zack.clement@icloud.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)  
David R. Seligman, P.C. (admitted *pro hac vice*)  
Steven N. Serajeddini (admitted *pro hac vice*)  
W. Benjamin Winger (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
300 North LaSalle  
Chicago, Illinois 60654  
Telephone:   (312) 862-2000  
Facsimile:    (312) 862-2200  
Email:           james.sprayregen@kirkland.com  
                    david.seligman@kirkland.com  
                    steven.serajeddini@kirkland.com  
                    benjamin.winger@kirkland.com

-and-

AnnElyse Scarlett Gibbons (admitted *pro hac vice*)  
**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
601 Lexington Avenue  
New York, New York 10022  
Telephone:   (212) 446-4800  
Facsimile:    (212) 446-4900  
Email:           annelyse.gibbons@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on November 3, 2017, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Zack A. Clement*
One of Counsel