# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GENON ENERGY, INC., *et al.*,[1] | ) | Case No. 17-33695 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## SUMMARY COVER SHEET TO THE SECOND INTERIM FEE APPLICATION OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP, ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD FROM OCTOBER 1, 2017, THROUGH AND INCLUDING DECEMBER 12, 2017

In accordance with the Local Bankruptcy Rules for the Southern District of Texas (the "Local Bankruptcy Rules"), Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "K&E"), attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), submits this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which this Summary is attached

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091). The Debtors' service address is: 804 Carnegie Center, Princeton, New Jersey 08540.

(this "<u>Fee Application</u>")[2] for the period from October 1, 2017, through December 12, 2017 (the "<u>Fee Period</u>").

K&E submits the Fee Application as its second interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 228] (the "<u>Interim Compensation Order</u>") and the *Third Amended Joint Chapter 11 Plan of Reorganization of Genon Energy, Inc. and Its Debtor Affiliates*, dated as of December 12, 2017, which plan was confirmed on December 12, 2017 [Docket No. 1250].

| Name of Applicant | | Kirkland & Ellis LLP and Kirkland & Ellis International LLP |
|---|---|---|
| Applicant's professional role in case | | Counsel to the Debtors and Debtors in Possession |
| Indicate whether this is an application for pre or post confirmation services | | Pre confirmation services |
| Effective date of order approving professional's retention | | June 14, 2017 |
| | **Beginning of Period** | **Ending of Period** |
| Time period covered in application | October 1, 2017 | December 12, 2017 |
| Time periods covered by any prior applications | June 14, 2017 | September 30, 2017 |
| Total amounts awarded in all prior applications | | $0.00 |
| Total fees requested in this application | | $9,586,069.50 |
| Total professional fees requested in this application | | $9,282,863.50 |
| Total actual professional hours covered by this application | | 10,350.00 |
| Average hourly rate for professionals | | $896.90 |

---

[2]   Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

| Name of Applicant | Kirkland & Ellis LLP and Kirkland & Ellis International LLP |
|---|---|
| Total paraprofessional fees requested in this application | $303,206.00 |
| Total actual paraprofessional hours covered by this application | 1,025.20 |
| Average hourly rate for paraprofessionals | $295.75 |
| Reimbursable expenses sought in this application | $282,523.13 |
| Total to be paid to priority unsecured creditors under the Plan | Article III of the *Debtors' Third Amended Joint Chapter 11 Plan of Reorganization of GenOn Energy, Inc. and Its Debtor Affiliates*, dated December 10, 2017 [Docket No. 1213] (the "Plan")[3] sets forth the proposed treatment for priority unsecured claims. |
| Percentage dividend to priority unsecured creditors under the Plan | Article III of the Plan sets forth the proposed treatment for priority unsecured claims. |
| Total to be paid to unsecured creditors under the Plan | Article III of the Plan sets forth the proposed treatment for unsecured claims. |
| Percentage dividend to unsecured creditors under the Plan | Article III of the Plan sets forth the proposed treatment for unsecured claims. |
| Date of confirmation hearing | December 12, 2017 |
| Indicate whether plan has been confirmed | Yes, the Plan was confirmed on December 12, 2017 [Docket No. 1250]. |

---

[3]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

Dated:  January 5, 2018          /s/ David R. Seligman, P.C.
Houston, Texas                   James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
                                 David R. Seligman, P.C. (admitted *pro hac vice*)
                                 Steven N. Serajeddini (admitted *pro hac vice*)
                                 W. Benjamin Winger (admitted *pro hac vice*)
                                 **KIRKLAND & ELLIS LLP**
                                 **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                 300 North LaSalle
                                 Chicago, Illinois 60654
                                 Telephone:    (312) 862-2000
                                 Facsimile:    (312) 862-2200
                                 Email:        james.sprayregen@kirkland.com
                                               david.seligman@kirkland.com
                                               steven.serajeddini@kirkland.com
                                               benjamin.winger@kirkland.com

                                 -and-

                                 AnnElyse Scarlett Gibbons (admitted *pro hac vice*)
                                 **KIRKLAND & ELLIS LLP**
                                 **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                 601 Lexington Avenue
                                 New York, New York 10022
                                 Telephone:    (212) 446-4800
                                 Facsimile:    (212) 446-4900
                                 Email:        annelyse.gibbons@kirkland.com

                                 *Co-Counsel to the Debtors and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GENON ENERGY, INC., *et al.*,[1] | ) | Case No. 17-33695 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

---

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JANUARY 29, 2018, AT 9:00 A.M. (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING.  YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091).  The Debtors' service address is:  804 Carnegie Center, Princeton, New Jersey 08540.

Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "K&E"), attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits its second interim application (this "Fee Application") for the allowance of compensation for professional services provided in the amount of $9,586,069.50 and reimbursement of actual and necessary expenses in the amount of $282,523.13 for the period from October 1, 2017, through and including December 12, 2017 (the "Fee Period")[1].  In support of this Fee Application, K&E submits the declaration of David R. Seligman, P.C., a partner at K&E, (the "Seligman Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference.  In further support of this Fee Application, K&E respectfully states as follows.

## Jurisdiction

1.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 2016-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules"), and

---

[1]      On December 19, 2017, K&E filed its *First Interim Fee Application of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from June 14, 2017 Through and Including September 30, 2017* [Docket No. 1273] (the "First Interim Fee Application"), with the Court (as defined herein).  As of the date hereof no objections have been filed with respect to the First Interim Fee Application.  A hearing is scheduled before the Court for January 17, 2018, at 3:00 p.m. (Central Time).

the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 228] (the "Interim Compensation Order").

**Background**

4.      On June 14, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On the Petition Date, the Court entered an order [Docket No. 4] authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.

5.      A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Mark A. McFarland in Support of Debtors' Chapter 11 Petitions*, filed on the Petition Date [Docket No. 19] and incorporated herein by reference.

6.      On July 13, 2017, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

**Preliminary Statement**

7.      During the Fee Period, K&E represented the Debtors professionally and diligently, advising them on a variety of complex matters and issues, as a result of which the Debtors took action to maximize the value of their estates for the benefit of all parties in interest, culminating in confirmation of the Plan.

8.      ***Estimation of Owner Lessor Plaintiff's Claims.***   The Bankruptcy Court's evidentiary hearing on the Debtors' motion requesting the Court to estimate the Owner Lessor

3

Plaintiffs' Claims at $0 [Docket No. 128] (the "Estimation Motion") continued throughout the Fee Period.  Closing arguments took place on November 7, 2017 and the Court issued an oral bench ruling on the same day, estimating, for all purposes, the claims outlined in the Estimation Motion at zero dollars.

9.      *The Marketing Process.*   Over the course of these chapter 11 cases, the Debtors, in consultation with their other stakeholders, determined that certain strategic sale transactions would likely enhance the value of the Debtors' estates.  To date, the Debtors have received indications of interest from a host of financial and strategic parties and have entered into confidentiality agreements with certain potential bidders to permit further negotiations.  On October 6, 2017, first round bids from potential bidders were due.  The Debtors and their advisors worked diligently to determine which parties proceeded to the second phase of the bidding process.  Those parties selected were subsequently granted access to a data room containing detailed information about the Debtors' assets.  Second round bids from these phase two parties are due January 12, 2018. The Debtors and their advisors continue to work diligently towards the pursuit of a value-maximizing sale transactions.

10.      *Claims Objection Procedures*.  On October 21, 2017, the Debtors filed its *Motion to Approve Omnibus Claim Objection Procedures* [Docket No. 990].  On December 8, 2017, the Court entered an order approving the Debtors' motion [Docket No. 1196].

11.      *Natural Gas Litigation*.  The Debtors responded to a host of motions filed by a class of plaintiffs alleging violations of antitrust laws (the "Natural Gas Plaintiffs").  On October 11, 2017, the Natural Gas Plaintiffs filed their *Motion of the Natural Gas Litigation Midwest Class Plaintiffs to Stay Proceedings Regarding Class Claim* [Docket No. 936].  On October 18, the Debtors filed their *Objection to Motion of the Natural Gas Litigation Midwest Class Plaintiffs to*

*Stay Proceedings Regarding Class Claim* [Docket No. 969].  On October 27, 2017, the Court entered an order denying the *Motion of the Natural Gas Litigation Midwest Class Plaintiffs to Stay Proceedings Regarding Class Claim* [Docket No. 1035].

12.    On October 13, 2017, the Debtors filed their *Objection to Motion of the Natural Gas Litigation Midwest Class Plaintiffs in Support of Allowance of Class Proofs of Claim* [Docket No. 947].  On October 25, 2017, the Natural Gas Plaintiffs filed their *Reply in Support of Motion in Support of Allowance of Class Proofs of Claim* [Docket No. 1001].  On October 31, 2017, the Debtors filed their *Sur-Reply to Natural Gas Plaintiffs' Reply in Support of Allowance of Class Proofs of Claim* [Docket No. 1048].  On November 13, 2017, the Court entered an order denying the *Motion of the Natural Gas Litigation Midwest Class Plaintiffs for Allowance of Class Proof of Claim* [Docket No. 1165].  The Natural Gas Plaintiffs filed an objection to the Debtors' Plan and after extensive discussions, the parties were able to resolve all open Plan objections prior to the Confirmation Hearing by adding language to the Confirmation Order (defined below).

13.    ***Extending RSA Milestones***.  During the Fee Period, the Debtors negotiated a settlement with the GenOn and GAG noteholders that are a party to the RSA (the "Consenting Noteholders") to extend certain RSA milestones.  On October 30, 217, the Debtors and the Consenting Noteholders entered into a consent agreement where the Debtors would amend the Consenting GAG Noteholders' plan treatment in exchange for extending the effective date deadline to June 30, 2018, or September 30, 2018 if regulatory approvals are still pending.  On November 3, 2017, the Debtors filed its *Motion to Approve a Global Settlement* [Docket No. 1069] seeking Court approval of the consent agreement.  This settlement was approved at Confirmation.

14. **Plan Confirmation.** K&E focused on securing confirmation of the Debtors' prearranged chapter 11 plan—a process that has involved preparing for the December 12, 2017 Confirmation Hearing, working closely with the Office of the United States Trustee for the Southern District of Texas and their other stakeholders to respond to and resolve numerous objections to confirmation of the Plan. At a hearing on December 12, 2017 (the "<u>Confirmation Hearing</u>"), the Bankruptcy Court confirmed the Debtors' Plan.

15. In advance of the Confirmation Hearing, the Debtors work tirelessly to resolve a host of open issues and asked the Court to approve a Confirmation Order that contained comprehensive settlements with (i) NRG, to facilitate its transition and emergence from bankruptcy (including multiple Plan Supplement Documents, some of which became effective upon entry of the Confirmation Order); (ii) the Consenting Noteholders, including various Plan Supplement Documents and the aforementioned consent agreement; (iii) GenMA and its creditors, including with respect to certain corporate governance issues, its determination to opt out of third-party releases, its proof of claim (and related creditor proofs of claim), and a comprehensive settlement of issues left open after the hearing on the Estimation Motion; and (iv) REMA and its creditors, including with respect to certain corporate governance issues, its determination to opt out of third-party releases, its proof of claim (and related creditor proofs of claim), and an on-going investigation of claims.

## <u>Case Status Summary</u>

16. The Debtors filed these chapter 11 cases with a prepetition restructuring support agreement (the "<u>RSA</u>") that had overwhelming consensus among their primary stakeholders, including their non-Debtor parent, NRG, and holders of over ninety percent in principal amount of the prepetition unsecured notes issued by GenOn and GenOn Americas Generation, LLC ("<u>GAG</u>"), respectively. The RSA encompasses a global deal that permits GenOn to emerge as a

wholly independent company and contemplates restructuring transactions that would: (a) convert approximately $1.8 billion of debt to equity under a chapter 11 plan; (b) pay cash to unsecured noteholders at an agreed-upon discount to par; (c) implement a global settlement of potential claims and causes of action against NRG; and (d) provide the Debtors with exit financing. The restructuring significantly delevered the Debtors' balance sheet by more than $1 billion and implemented an orderly transition to a standalone power generation company.

17.     On October 5, 2017, an order was entered approving the adequacy of the disclosure statement, allowing the Debtors to launch the solicitation process for voting on the plan of reorganization on October 6, 2017.   On December 12, 2017, the Court entered the *Order Confirming the Third Amended Joint Chapter 11 Plan of Reorganization of GenOn Energy, Inc., and Its Debtor Affiliates* [Docket No. 1250] (the "Confirmation Order").

18.     The above-mentioned negotiations all occurred while the Debtors continued to operate their businesses in the ordinary course.   Committed to ensuring that the chapter 11 filing would not disrupt their businesses, the Debtors stabilized their operations through various operational first- and second-day motions and orders, and ultimately confirmed the plan.   This allowed them to, among other things, continue intercompany arrangements, obtain letters of credit critical to operations, pay employees, continue their hedging program, and continue to use their cash management system until the Confirmation Order was entered.   Since the Confirmation Order was entered, the Debtors have been diligently working to implement the terms of the Plan and various settlements embodied therein to ensure a smooth and timely emergence from chapter 11.

### The Debtors' Retention of K&E

19.     On July 13, 2017, the Court entered the *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 197]

7

(the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference.   The Retention Order authorizes the Debtors to compensate and reimburse K&E in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Interim Compensation Order.   The Retention Order also authorizes the Debtors to compensate K&E at K&E's hourly rates charged for services of this type and to reimburse K&E for K&E's actual and necessary out-of-pocket expenses incurred, subject to application to this Court.   The particular terms of K&E's engagement are detailed in the engagement letter by and between K&E and the Debtors, effective as of June 23, 2016, and attached hereto as **Exhibit C** (the "Engagement Letter").

20.     The Retention Order authorizes K&E to provide the following services consistent with and in furtherance of the services enumerated above:

a.     advising the Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their business and properties;

b.     preparing pleadings, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates and consistent with the services identified in the Retention Order;

c.     appearing before the Court and any appellate courts to represent the interests of the Debtors' estates before those courts in connection with the services in the Retention Order; and

d.     performing all other legal services reasonably necessary or otherwise beneficial for the Debtors in connection with these chapter 11 cases.

**Disinterestedness of K&E**

21.     To the best of the Debtors' knowledge and as disclosed in the *Declaration of David R. Seligman in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date*

8

[Docket No. 121], the *First Supplemental Declaration of David R. Seligman in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 239], the *Second Supplemental Declaration of David R. Seligman in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 696], the *Third Supplemental Declaration of David R. Seligman in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 772], and the *Fourth Supplemental Declaration of David R. Seligman in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 1260] (collectively, the "K&E Declaration"), (a) K&E is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) K&E has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the K&E Declaration.

22.     K&E may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors in these chapter 11 cases.  In the K&E Declaration, K&E disclosed its connections to parties in interest that

it has been able to ascertain using its reasonable efforts.  K&E will update the K&E Declaration as appropriate, if K&E becomes aware of relevant and material new information.

23.     K&E performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

24.     Except to the extent of the advance payments paid to K&E that K&E previously disclosed to this Court in the K&E Declaration, K&E has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

25.     Pursuant to Bankruptcy Rule 2016(b), K&E has not shared, nor has K&E agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of K&E or (b) any compensation another person or party has received or may receive.

<u>**Summary of Compliance with Interim Compensation Order**</u>

26.     This Fee Application has been prepared in accordance with the Interim Compensation Order.

27.     K&E seeks interim compensation for professional services rendered to the Debtors during the Fee Period in the amount of $9,586,069.50 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $282,523.13. During the Fee Period, K&E attorneys and paraprofessionals expended a total of 11,375.20 hours for which compensation is requested.

28.     In accordance with the Interim Compensation Order, as of the date hereof, K&E has received payments totaling $0.00 for the Fee Period.  Accordingly, by this Fee Application, and to the extent such amounts have not been paid by the time of the hearing on this Fee

Application, K&E seeks payment of $9,868,592.63, which amount represents the entire amount of the unpaid fees and expenses for the Fee Period.[2]

**Fees and Expenses Incurred During Fee Period**

**A.     Customary Billing Disclosures**.

29.     K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by K&E in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by K&E for other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such restructuring and other complex matters typically are national in scope and typically involve great complexity, high stakes, and severe time pressures.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit E** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.     Fees Incurred During Fee Period**.

30.     In the ordinary course of K&E's practice, K&E maintains computerized records of the time expended to render the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit F** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

---

[2]     This amount also reflects the 20% holdback for the Fee Period.

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at K&E's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the first interim application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* (the "Retention Application").

**C.     Expenses Incurred During Fee Period**.

31.     In the ordinary course of K&E's practice, K&E maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.   K&E currently charges $0.16 per page for standard duplication in its offices in the United States.   K&E does not charge its clients for incoming facsimile transmissions.

32.     For the convenience of the Court and all parties in interest, attached hereto as **Exhibit G** is a summary for the Fee Period, setting forth the total amount of reimbursement sought with respect to each category of expenses for which K&E is seeking reimbursement.

### Summary of Legal Services Rendered During the Fee Period

33.     As discussed above, during the Fee Period, K&E provided extensive and important professional services to the Debtors in connection with these chapter 11 cases.   These services were often performed under severe time constraints and were necessary to address a multitude of

critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

34.     To provide a meaningful summary of K&E's services provided on behalf of the Debtors and their estates, K&E has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "Matter Category") in connection with these chapter 11 cases.  The following is a summary of the fees and hours billed for each Matter Category in the Fee Period:[3]

| Matter Number | Project Category Description | Hours | | Total Compensation | |
|---|---|---|---|---|---|
| | | Budgeted | Billed | Budgeted | Billed |
| 0007 | Chapter 11 Filing | 0 – 0 | 0.00 | $0.00 – $0.00 | $0.00 |
| 0008 | Case Administration | 578 – 722 | 131.10 | $350,000.00 – $437,197.00 | $68,852.50 |
| 0009 | Plan, Disclosure Statement, Confirmation | 1,668 – 2,084 | 2,659.20 | $1,500,000.00 – $1,875,000.00 | $2,249,371.50 |
| 0010 | K&E Fee, Employment Application, Object. | 312 – 390 | 216.50 | $250,000.00 – $312,500.00 | $122,615.50 |
| 0011 | Non-K&E Fee, Employment App., Objection | 263 – 329 | 125.50 | $200,000.00 – $250,000.00 | $82,041.00 |
| 0012 | SOFAs and Schedules | 387 – 484 | 47.70 | $300,000.00 – $375,000.00 | $25,524.00 |
| 0013 | U.S. Trustee Issues | 394 – 493 | 11.30 | $300,000.00 – $375,000.00 | $7,199.00 |
| 0014 | Business Operations | 460 – 575 | 84.50 | $350,000.00 – $437,500.00 | $78,827.50 |
| 0015 | Corporate and Governance Issues | 639 – 799 | 291.20 | $650,000.00 – $812,500.00 | $275,095.50 |
| 0016 | Cash Management | 929 – 1,161 | 0.90 | $750,000.00 – $937,500.00 | $895.50 |
| 0017 | DIP, Cash Collateral, Exit Financing | 889 – 1,111 | 138.70 | $750,000.00 – $937,500.00 | $139,662.50 |
| 0018 | Employee Issues | 706 – 883 | 346.20 | $625,000.00 – $781,250.00 | $395,904.00 |
| 0019 | Insurance and Related Matters | 306 – 383 | 1.80 | $250,000.00 – $312,500.00 | $1,591.00 |
| 0020 | Regulatory Issues | 743 – 929 | 80.70 | $600,000.00 – $750,000.00 | $67,719.00 |
| 0021 | Vendor and Supplier Issues | 921 – 1,151 | 40.30 | $650,000.00 – $812,500.00 | $26,468.50 |
| 0022 | Utilities | 181 – 227 | 1.30 | $150,000.00 – $187,500.00 | $838.50 |
| 0023 | Creditor Communications | 225 – 290 | 90.40 | $150,000.00 – $193,333.00 | $108,327.50 |
| 0024 | Taxes | 186 – 233 | 127.80 | $150,000.00 – $187,500.00 | $140,816.50 |
| 0025 | Adversary Proceedings, Contested Matters | 1,840 – 2,700 | 1,826.60 | $1,750,000.00 – $2,567,700.00 | $1,601,240.50 |

---

[3]     In certain instances K&E may have billed the same amount of fees, but different amount of hours to different matter categories.  This difference is the result of different staffing of each such matter category.

| Matter Number | Project Category Description | Hours | | Total Compensation | |
|---|---|---|---|---|---|
| | | Budgeted | Billed | Budgeted | Billed |
| 0026 | Automatic Stay Matters | 551 – 689 | 17.10 | $500,000.00 – $625,000.00 | $11,511.00 |
| 0028 | Hearings | 538 – 673 | 658.90 | $562,500.00 – $703,125.00 | $509,240.00 |
| 0029 | Claims Administration and Objections | 461 – 576 | 208.00 | $400,000.00 – $500,000.00 | $140,339.00 |
| 0030 | Executory Contracts and Unexpired Leases | 576 – 720 | 220.70 | $500,000.00 – $625,000.00 | $158,382.00 |
| 0031 | Use, Sale, or Lease of Property | 852 – 1,065 | 2,735.10 | $750,000.00 – $937,500.00 | $2,093,618.50 |
| 0032 | Non-Working Travel | 353 – 441 | 271.60 | $312,500.00 – $390,625.00 | $244,237.50 |
| 0034 | Exit Planning | 1,619 – 2,024 | 1,042.10 | $1,500,000.00 – $1,875,000.00 | $1,035,751.50 |
| **Totals** | | **16,963 – 21,612** | **11,375.20** | **$14,600,000 – $18,635,730** | **$9,586,069.50** |

35.     The following is a summary, by Matter Category, of the most significant professional services provided by K&E during the Fee Period.  This summary is organized in accordance with K&E's internal system of matter numbers.  The detailed descriptions demonstrate that K&E was heavily involved in performing services for the Debtors on a daily basis, often including night and weekend work, to meet the needs of the Debtors' estates in these chapter 11 cases.  A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by K&E partners, associates and paraprofessionals by matter, and the aggregate fees associated with each matter is attached hereto as **Exhibit H**.

36.     In addition, K&E's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **Exhibit I**, and K&E's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit J**.

(a) **Case Administration [Matter No. 8]**

Total Fees:    $68,852.50
Total Hours:   131.10

37.     This Matter Category includes time spent on a variety of tasks that were necessary to ensure the efficient and smooth administration of legal services related to the Debtors' chapter 11 cases.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     preparing notices of motions, proposed orders, exhibits, and schedules;

(ii)    attending work in progress meetings among various advisor groups;

(iii)   coordinating delivery of pleadings;

(iv)    monitoring dockets to track the filing of pleadings and remain apprised of critical dates; and

(v)     coordinating detailed documents and analyses across K&E professionals, the Debtors, and the Debtors' other advisors.

38.     Time billed to this Matter Category also includes work and meetings related to multiple matters such that the time cannot be easily allocated to one of the other matters.

(b) **Plan / Disclosure Statement / Confirmation [Matter No. 9]**

Total Fees:    $2,249,371.50
Total Hours:   2,659.20

39.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to developing a plan of reorganization (the "Plan") and disclosure statement (the "Disclosure Statement") in connection with these chapter 11 cases and obtaining confirmation of the Plan.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     researching, reviewing, and evaluating precedent regarding plan strategies and components, including issues related to confirmation of a chapter 11 plan of reorganization;

(ii)    researching, reviewing, and evaluating various restructuring issues and restructuring alternatives;

15

(iii) researching, reviewing, evaluating and ultimately implementing various strategies to effectuate separation from NRG to a standalone entity;

(iv) reviewing and amending the Plan, specifically to implement the GenMA, NRG, and GAG Settlements;

(v) evaluating and ultimately pursuing a marketing process for a potential third-party sale transaction, and reviewing and amending the Plan and disclosure statement to reflect such dual-process;

(vi) drafting, revising, and filing the *Debtors' Second Amended Plan* [Docket No. 832]; the *Debtors' Second Amended Disclosure Statement* [Docket No. 835]; the *Debtors' Second Amended Proposed Disclosure Statement Order* [Docket No. 837]; the *Debtors' Third Amended Proposed Disclosure Statement Order* [Docket No. 855]; and the *Debtors' Third Amended Plan* [Docket No. 1213];

(vii) responding to and resolving numerous formal and informal Plan objections;

(viii) drafting, revising, and filing the *Debtors' Plan Supplement* [Docket No. 1047]; the *Debtors' First Amended Plan Supplement* [Docket No. 1068]; the *Debtors' Second Amended Plan Supplement* [Docket No. 1212]; the *Debtors' Third Amended Plan Supplement* [Docket No. 1216]; and the *Debtors' Fourth Amended Plan Supplement* [Docket No. 1220]; and

(ix) coordinating execution of and implementing multiple plan supplement documents and settlement agreements.

**(c)    K&E Fee / Employment Application / Objection [Matter No. 10]**

Total Fees:    $122,615.50
Total Hours:    216.50

40.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to the retention of K&E as the Debtors' counsel.  Specifically, K&E attorneys and paraprofessionals spent time:

(i) preparing pleadings and a comprehensive conflict analysis necessary to obtain the order of the Court approving the employment of K&E to represent the Debtors;

      (ii)      implementing internally established procedures which require the continuous analysis of potential new conflicts;

      (iii)     preparing updated professional disclosures for filing with the Court;

      (iv)     preparing and distributing K&E's monthly fee statements, in accordance with the Interim Compensation Order, for the periods October 1, 2017 through October 31, 2017 [Docket No. 1263], and November 1, 2017 through December 12, 2017 [Docket No. 1288];

      (v)      preparing and distributing K&E's first interim fee application, in accordance with the Interim Compensation Order, for the period June 14, 2017 through September 30, 2017 [Docket No. 1273]; and

      (vi)     reviewing all time entries to ensure compliance with the Interim Compensation Order and applicable provisions of the Bankruptcy Code, and to make necessary redactions to preserve the confidentiality of the work performed for the Debtors.

    **(d)**     **<u>Non-K&E Fee / Employment / Objection [Matter No. 11]</u>**

        Total Fees:    $82,041.00
        Total Hours:   125.50

41.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to ensuring the retention of the Debtors' other professionals in these chapter 11 cases.  Specifically, K&E attorneys and paraprofessionals spent time:

      (i)       coordinating with the Debtors and their other advisors with respect to ordinary course professional retentions and complying with the related disclosure requirements of applicable provisions of the Bankruptcy Code;

      (ii)      reviewing retention applications filed by the Committee's professionals and coordinating with the Committee to address the Debtors' concerns regarding these retentions and reviewing related fee statements; and

      (iii)     coordinating and filing interim fee applications of the Debtors' various other advisors, in accordance with the Interim Compensation Order, for the period June 14, 2017 through September 30, 2017 [Docket Nos. 1270, 1271, 1272, and 1275].

(e)      **SOFAs and Schedules [Matter No. 12]**

Total Fees:     $25,524.00
Total Hours:    47.70

42.      This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to advising the Debtors, Epiq Bankruptcy Solutions, LLC, and other advisors in connection with the preparation, review, revision, and filing of the Debtors' monthly operating reports, periodic reports, schedules of assets and liabilities, and statements of financial affairs, as well as preparing, reviewing, revising, and filing subsequently amended versions of such (collectively, the "Schedules and Statements").  Moreover, K&E attorneys advised the Debtors regarding drafting the Schedules and Statements, attended regular conferences with the Debtors and their advisors regarding the same, and conferred and corresponded with the Debtors and K&E professionals regarding the monthly operating reports.

(f)      **U.S. Trustee Issues [Matter No. 13]**

Total Fees:     $7,199.00
Total Hours:    11.30

43.      This Matter Category includes time spent by K&E attorneys and paraprofessionals corresponding with the U.S. Trustee with respect to the following issues:

(i)       conducting discussions, phone calls and correspondence with the U.S. Trustee regarding retention matters and responding to questions and comments regarding the same;

(ii)      conducting discussions, phone calls and correspondence with the U.S. Trustee regarding various other pleadings and matters and responding to questions and comments regarding the same; and

(iii)     coordinating efforts among the Debtors and their other professionals to address various concerns and issues raised by the U.S. Trustee with respect to the Disclosure Statement and Plan.

(g)   **Business Operations [Matter No. 14]**

Total Fees:    $78,827.50
Total Hours:   84.50

44.    It is important that the Debtors and their advisors create and implement an all-encompassing and cohesive strategy for maintaining business operations with minimal disruptions during the course of the Debtors' chapter 11 cases.   K&E attorneys and paraprofessionals spent time developing a strategy with the Debtors to ensure a smooth transition into chapter 11 and to ensure that going forward the business operations continue without interruption.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     assisting the Debtors formulate a go-forward business plan;

(ii)    communicating with the Debtors' officers regarding the effect of the Debtors' chapter 11 cases on the Debtors' ongoing operations, including the Debtors' complex hedging and trading practices;

(iii)   assisting the Debtors and other advisors and professionals with their compliance with chapter 11 operating and reporting requirements; and

(iv)    communicating with vendors and confidential hedging counterparties regarding uninterrupted service during these chapter 11 cases.

(h)   **Corporate Governance [Matter No. 15]**

Total Fees:    $275,095.50
Total Hours:   291.20

45.    This Matter Category includes time spent by K&E attorneys and paraprofessionals advising the Debtors, the Board of Directors (the "Board"), and the Governance Committee of the Board (the "Governance Committee") during the pendency of these chapter 11 cases.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     communicating with the Debtors' directors and officers on the status of the Debtors' chapter 11 cases;

(ii)    participating in meetings of the Debtors' boards of directors;

19

(iii)   analyzing various other corporate governance issues related to the Debtors' chapter 11 cases;

(iv)   reviewing, revising, and finalizing various filings in accordance with regulations promulgated by the Securities and Exchange Commission; and

(v)   drafting and adopting board resolutions and board materials related to these chapter 11 cases.

### (i)   Cash Management [Matter No. 16]

Total Fees:    $895.50
Total Hours:   0.90

46.     This Matter Category includes time spent by K&E attorneys to implement various terms detailed in the Court's *Final Order Authorizing the Debtors to Operate Their Cash Management System* [Docket No. 232].

### (j)   DIP, Cash Collateral, Exit Financing [Matter No. 17]

Total Fees:    $139,662.50
Total Hours:   138.70

47.     This Matter Category includes time spent by K&E attorneys and paraprofessionals regarding letter of credit and exit financing issues. Initially, the Debtors intended to enter into exit financing consisting of (a) a senior secured revolving credit facility to be provided to the extent necessary to fund the reorganized Debtors' working capital and other operational needs and (b) a rights offering of secured notes in an aggregate principal amount of up to $900 million. After much deliberation, the Debtors have elected to forego the rights offering. The Debtors and their advisors continue to evaluate and analyze appropriate exit financing. Specifically, K&E attorneys and paraprofessionals spent time:

(i)   reviewing and analyzing the Debtors' debt documents;

(ii)   analyzing the Debtors' letter of credit facility; and

(iii)   evaluating and developing the Debtors' exit financing plan.

**(k)**   **Employee Issues [Matter No. 18]**

Total Fees:     $395,904.00
Total Hours    346.20

48.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to various issues involving the Debtors' employees.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     reviewing and analyzing employee bonus, incentive, and severance considerations and structures;

(ii)    drafting, negotiating, reviewing, and entering the Pension Indemnity Agreement and Employee Matters Agreement; and

(iii)   advising the Debtors with respect to compensation programs for key employees.

**(l)**   **Insurance and Related Matters [Matter No. 19]**

Total Fees:     $1,591.00
Total Hours:    1.80

49.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to ensuring that Debtors' insurance policies were maintained during these chapter 11 cases.

**(m)**   **Regulatory Issues [Matter No. 20]**

Total Fees:     $67,719.00
Total Hours:    80.70

50.     This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to various state and federal regulatory requirements and environmental issues.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)     diligencing the Debtors' regulatory issues and developing plans for compliance with state and federal regulations during the pendency of these chapter 11 cases;

(ii)    corresponding with outside regulatory counsel;

(iii)   drafting various regulatory filings; and

21

(iv)    communicating with state and federal regulators.

**(n)    Vendor and Supplier Issues [Matter No. 21]**

Total Fees:    $26,468.50
Total Hours:   40.30

51.    This Matter Category includes time spent by K&E attorneys and paraprofessionals advising the Debtors on vendor and supplier issues, including with respect to first day relief and postpetition business activities.  Specifically, K&E attorneys and paraprofessionals spent time:

(i)    reviewing and addressing issues related to various assertions raised by certain vendors; and

(ii)    communicating with the Debtors and the vendors regarding the same.

**(o)    Utilities [Matter No. 22]**

Total Fees:    $838.50
Total Hours:   1.30

52.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services relating to utility issues arising in connection with filing these chapter 11 cases, including:

(i)    addressing requests from various utility providers for additional assurance of the Debtors' ongoing payment of their utility expenses; and

(ii)    communicating and negotiating with such utility providers regarding such requests.

**(p)    Creditor Communications [Matter No. 23]**

Total Fees:    $108,327.50
Total Hours:   90.40

53.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to inquiries from various creditors in these chapter 11 cases and providing relevant information and access to the Debtors and their records as requested, including:

(i)     monitoring, reviewing, and responding to general creditor inquiries, including 2004 requests from various creditor entities;

(ii)    preparing and responding to diligence requests of ad hoc groups of creditors; and

(iii)   assisting the Debtors' management team with analyzing certain issues, and various creditor inquiries, related to the Debtors' go-forward business plan.

**(q)**    **Taxes [Matter No. 24]**

Total Fees:   $140,816.50
Total Hours:  127.80

54.    This Matter Category includes time spent by K&E attorneys and paraprofessionals conducting legal research, preparing correspondence and pleadings, and generally advising the Debtors on tax issues relating to or arising during the chapter 11 cases. During the Fee Period, K&E attorneys were responsible for researching and analyzing certain tax issues arising in connection with the Debtors' business operations, including the following:

(i)     researching and analyzing taxation-related issues with respect to the Debtors' restructuring and corresponding with the Debtors and third parties regarding such matters;

(ii)    corresponding with the Debtors as well as certain third parties regarding certain tax-planning issues; and

(iii)   drafting, negotiating, reviewing, and entering into the Tax Matters Agreement.

**(r)**    **Adversary Proceedings, Contested Matters [Matter No. 25]**

Total Fees:   $1,601,240.50
Total Hours:  1,826.60

55.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services relating to litigation, adversary proceedings, or other adversarial matters. Specifically, K&E attorneys and paraprofessionals spent time:

(i)     preparing for and litigating a multi-day trial with respect to the Estimation Motion, necessitating, among other things,

15 depositions, extensive briefing, and detailed document analysis and discovery, including the production of more than 25,000 documents and nine days of hearings and proceedings, each of which individually required significant groundwork and preparation; and

(ii)      responding to and resolving formal and informal objections to the Plan by more than 50 parties in interest and preparing arguments in response to the U.S. Trustee's objection to the Plan.

**(s)**      **Automatic Stay Matters [Matter No. 26]**

Total Fees:     $11,511.00
Total Hours:   17.10

56.      This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services relating to the imposition of the automatic stay. Specifically, K&E attorneys and paraprofessionals spent time:

(i)      responding to inquiries from counsel regarding the status of proceedings stayed upon the commencement of these chapter 11 cases;

(ii)      researching issues related to the automatic stay; and

(iii)      negotiating resolutions to potential violations of the automatic stay.

**(t)**      **Hearings [Matter No. 28]**

Total Fees:     $509,240.00
Total Hours:   658.90

57.      This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services related to preparing for and attending several hearings during the Fee Period (each a "Hearing" and, collectively, the "Hearings"), including preparing agendas, orders, and binders related to Hearings, settling orders before and after Hearings, and corresponding with various parties in preparation for, and after the Hearings. These services also included conferences to discuss multiple matters scheduled for a specific Hearing and coordinating Hearing logistics.

During the Fee Period, K&E attorneys and paraprofessionals spent considerable time preparing for and attending Hearings including:

(i)      certain of the trial dates that occurred during the Fee period with respect to the Estimation Motion, including on October 4, 2017, October 6, 2017, October 16, 2017, October 17, 2017, October 18, 2017, October 19, 2017, November 3, 2017, and November 7, 2017;

(ii)      hearing on the Motion of the Natural Gas Litigation Midwest Class Plaintiffs to Stay Proceedings Regarding Class Claim on October 19, 2017;

(iii)      hearing on the Motion of the Natural Gas Litigation Midwest Class Plaintiffs in Support of Allowance of Class Proofs of Claim on November 1, 2017; and

(iv)      Confirmation Hearing on December 12, 2017.

**(u)**      <u>**Claims Administration and Objections [Matter No. 29]**</u>

Total Fees:     $140,339.00
Total Hours:    208.00

58.      This Matter Category includes time K&E attorneys and paraprofessionals spent on matters related to claims administration and claims-related issues. Specifically, K&E attorneys and paraprofessionals spent time:

(i)      researching and analyzing claim treatment issues;

(ii)      review, analyzing, and initiating a review of the claim register;

(iii)      obtaining entry of the *Order Approving Omnibus Claims Objection Procedures* [Docket No. 1196] to permit efficient administration of claims; and

(iv)      preparing for the filing of the Debtors' omnibus claims objections, which filings are forthcoming.

### (v)   **Executory Contracts and Unexpired Leases [Matter No. 30]**

Total Fees:    $158,382.00
Total Hours:   220.70

59.    This Matter Category includes time spent by K&E attorneys examining issues related to the Debtors' executory contracts and unexpired leases.  K&E attorneys spent time researching, analyzing, renegotiating, or rejecting the Debtors' obligations under their various executory contracts.  Specifically, K&E attorneys spent time:

> (i)    researching, analyzing, and working with the Debtors to renegotiate the Debtors' obligations under certain contracts and leases; and
>
> (ii)   researching, analyzing, and collecting documents related to nonresidential leases.

### (w)   **Use, Sale, or Lease of Property [Matter No. 31]**

Total Fees:    $2,093,618.50
Total Hours:   2,735.10

60.    This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services relating to the Debtors' property interests.  Specifically, K&E attorneys and paraprofessionals spent time:

> (i)    researching and evaluating the best means to maximize the value of the equity interests of the Debtors and its wholly-owned subsidiaries, under the sale process described in the *Debtors' Motion to Approve Marketing Procedures* and other related initiatives, including with respect to GenMA and REMA;
>
> (ii)   negotiating and documenting confidentiality agreements executed by potential financial and strategic bidders;
>
> (iii)  populating data room based and responding to diligence requests from potential bidders and answering bidder questions regarding legal due diligence;
>
> (iv)   evaluating first round bids and determining which to advance to the second round of bidding;
>
> (v)    performing due diligence on asset packages and coordinating and populating data rooms for second round bidders;

26

> (vi)   preparing draft purchase agreement and populating schedules for separate asset packages including coordination with regulatory specialists and local regulatory counsel; and
>
> (vii)  assisting Credit Suisse and the Debtors' other advisors with respect to the marketing process.

61.   **Non-Working Travel Time [Matter No. 32]**

> Total Fees:    $244,237.50
> Total Hours:   271.60

62.   This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services relating to traveling in connection with their representation of the Debtors.  The amounts presented for review and the request for payment in the Fee Application reflect a reduction of one half the charges for travel time.

(x)   **Exit Planning [Matter No. 34]**

> Total Fees:    $1,035,751.50
> Total Hours:   1,042.10

63.   This Matter Category includes time spent by K&E attorneys and paraprofessionals providing services relating to preparing for the Debtors' emergence from chapter 11.  K&E attorneys and paraprofessionals spent time working with the Debtors and their various other advisors to develop and implement a strategy for emergence from chapter 11 and for a smooth transition to a standalone enterprise.   Specifically, K&E attorneys and paraprofessionals spent time:

> (i)    working with the Debtors and their other advisors to develop strategies to ease the transition from chapter 11;
>
> (ii)   implementing various settlements included in the plan supplement documents and settlement agreements;
>
> (iii)  negotiating and documenting confidentiality agreements executed by potential outsourcing counterparties;
>
> (iv)   drafting, negotiating, reviewing, and entering various outsourcing contracts related to IT, personnel, employee benefits, and payroll; and

       (v)     analyzing various other issues related to the Debtors' transition to a standalone enterprise.

**Actual and Necessary Expenses Incurred by K&E**

64.    As set forth in **Exhibit I** attached hereto, and as summarized in **Exhibit G** attached hereto, K&E has incurred a total of $282,523.13 in expenses on behalf of the Debtors during the Fee Period.  These charges are intended to reimburse K&E's direct operating costs, which are not incorporated into the K&E hourly billing rates.  K&E charges external copying and computer research at the provider's cost without markup.  Only clients who actually use services of the types set forth in **Exhibit I** of this Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

**Reasonable and Necessary Services Provided by K&E**

**A.**    **Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

65.    The foregoing professional services provided by K&E on behalf of the Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

66.    Many of the services performed by partners and associates of K&E were provided by K&E's Restructuring Group.  K&E has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with over 100 attorneys focusing on this area of the law.  The attorneys at K&E have represented either the debtor or the creditors' committee or have acted as special counsel in many large chapter 11 cases.

67.    In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from K&E's litigation, corporate and tax groups were heavily involved with K&E's representation

of the Debtors.  These practice groups also enjoy a national and international reputation for their expertise.  Overall, K&E brings to these chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

**B.    Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

68.    The time constraints imposed by the circumstances of these chapter 11 cases required K&E attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties in interest on a timely basis, and satisfy the demands of the Debtors' businesses and ensure the orderly administration of their estates.  Consistent with firm policy, and as further disclosed in the Retention Application, K&E attorneys and other K&E employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  K&E's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

69.    In addition, due to the location of the Debtors' businesses, co-counsel, creditors, and other parties in interest in relation to K&E's offices, frequent multi-party telephone conferences involving numerous parties were required.  On many occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials.  The disbursements for such services are not included in K&E's overhead for the purpose of setting billing rates and K&E has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

70.     Among other things, K&E makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement. Specifically, K&E regularly reviews its bills to ensure that the Debtors are only billed for services that were actual and necessary and, where appropriate, prorates expenses.  In that regard, K&E will waive certain fees and reduce its expenses if necessary.  In the Fee Period, K&E voluntarily reduced its fees by $251,043.00 and expenses by $44,654.62.  Consequently, K&E does not seek payment of such fees or reimbursement of such expenses in the Fee Application.

### K&E's Requested Compensation and Reimbursement Should be Allowed

71.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)     the time spent on such services;
>
> (b)     the rates charged for such services;
>
> (c)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

> (e) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

72. K&E respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates. K&E further believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' constituents. K&E further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

73. During the course of these chapter 11 cases, K&E's hourly billing rates for attorneys ranged from $555.00 to $1,525.00. The hourly rates and corresponding rate structure utilized by K&E in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by K&E for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. K&E strives to be efficient in the staffing of matters. These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

74. Moreover, K&E's hourly rates are set at a level designed to compensate K&E fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These

hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

75.     In sum, K&E respectfully submits that the professional services provided by K&E on behalf of the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by K&E, the nature and extent of K&E's services provided, the value of K&E's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.  Accordingly, K&E respectfully submits that approval of the compensation sought herein is warranted and should be approved.

76.     No previous application for the relief sought herein has been made to this or any other Court.

### **Reservation of Rights and Notice**

77.     It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application.  K&E reserves the right to include such amounts in future fee applications or a supplement to the Fee Application.  In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Trust Company, as indenture trustee for the GenOn Energy, Inc. 7.875% Senior Notes due 2017, 9.50% Senior Notes due 2018, and 9.875% Senior Notes due 2020, (collectively, the "GenOn Notes"), and counsel thereto; (d) Wilmington Savings Fund Society, FSB, as successor indenture trustee for the GenOn Americas Generation, LLC 8.50% Senior Notes due 2021 and 9.125% Senior Notes due 2031, (collectively, the "GAG Notes"), and counsel thereto; (e) NRG Energy, Inc., as administrative agent under the Debtors' secured prepetition revolving facility due 2018 (the "Revolver"), and counsel thereto; (f ) U.S. Bank National Association, as collateral trustee under

32

the Revolver; (g) Davis Polk & Wardwell LLP, as counsel to an ad hoc committee of GenOn Notes and GAG Notes; (h) Quinn Emanuel Urquhart & Sullivan, LLP, as counsel to an ad hoc steering committee of GAG Notes; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. (collectively, the "Notice Parties").  Pursuant to the Interim Compensation Order, any party, other than the Notice Parties, that wishes to object to the Fee Application, must file its objection with the Court, with a copy to Chambers and serve it on the affected professional and the Notice Parties so that it is actually received within 21 days of service of this Fee Application.

## No Prior Request

78.     No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, K&E respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit K**, (a) awarding K&E interim compensation for professional and paraprofessional services provided during the Fee Period in the amount of $9,586,069.50, and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $282,523.13; (b) authorizing and directing the Debtors to remit payment to K&E for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

| | |
|---|---|
| Dated:  January 5, 2018<br>Houston, Texas | */s/ David R. Seligman, P.C.*<br>James H.M. Sprayregen, P.C. (admitted *pro hac vice*)<br>David R. Seligman, P.C. (admitted *pro hac vice*)<br>Steven N. Serajeddini (admitted *pro hac vice*)<br>W. Benjamin Winger (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:           james.sprayregen@kirkland.com<br>                      david.seligman@kirkland.com<br>                      steven.serajeddini@kirkland.com<br>                      benjamin.winger@kirkland.com<br><br>-and-<br><br>AnnElyse Scarlett Gibbons (admitted *pro hac vice*)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:           annelyse.gibbons@kirkland.com<br><br>*Co-Counsel to the Debtors and Debtors in Possession* |