IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| GENON ENERGY, INC., *et al.*,[1] | Case No. 17-33695 (DRJ) |
| Debtors. | (Jointly Administered) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) DIRECTING CERTAIN ACTIONS IN FURTHERANCE OF THE GENMA SETTLEMENT, (II) APPOINTING A MEDIATOR, AND (III) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091). The Debtors' service address is: 804 Carnegie Center, Princeton, New Jersey 08540.

KE 50831205

> **THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER ON MARCH 7, 2018, AT 2:30 P.M. (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TX 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (this "Motion").

### Introduction[2]

1. The Court is well-aware of the importance of the GenMA Settlement to consummation of the NRG Settlement and ultimately the Plan. The Court has twice entered orders in furtherance of the GenMA Settlement, most recently directing the GenMA Settlement Parties to "use commercially reasonable efforts to consummate the GenMA Settlement no later than January 31, 2018." *See* Docket No. 1331, ¶ 3. The cost of delay is substantial. Among other consequences, GenMA incurs approximately $100,000 of incremental interest expense related to the PTCs for every additional day it takes to close the settlement, resulting in a corresponding decrease in the value of GenOn's direct equity interest in GenMA. Since the

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Third Amended Joint Chapter 11 Plan of Reorganization of GenOn Energy, Inc. and its Debtor Affiliates* [Docket No. 1213] (the "Plan").

2

January 31, 2018 deadline, nearly $3 million of interest has accrued that should have been avoidable.

2. The Debtors and GenMA recognize that time is of the essence, and have been working diligently to turn the GenMA Settlement Term Sheet (which was approved as part of the Plan) into definitive documents for execution and consummation of the GenMA Settlement. However, the Debtors and GenMA have been unable to resolve several key issues with the GenMA Owner Lessors in connection with definitive documentation, beyond the normal give-and-take that typically occurs whenever parties move from term sheets to definitive documentation, and this is preventing the parties from completing documentation, moving to consummation, paying off the PTCs, and eliminating GenMA's daily interest accrual.

3. When asked by their economic stakeholders when the GenMA Settlement will close, the Debtors unfortunately still cannot provide a reasonably accurate prediction. But this is not for lack of trying. Since the confirmation of the Plan, the Debtors and GenMA have pushed for multiple meetings and calls, between and among principals, legal advisors, and financial advisors to keep things moving towards consummation. (The GenMA Owner Lessors, for their part, have attended these meetings and calls, drafted a number of the relevant documents, and progress certainly has been made.) The Debtors and GenMA have provided considerable due diligence to the GenMA Owner Lessors. GenMA even agreed to pay for an energy consultant to the GenMA Owner Lessors to help facilitate and expedite the GenMA Owner Lessors' diligence and deliberations, in an effort to help the GenMA Owner Lessors move expeditiously. The Debtors and GenMA believe that they already have made significant concessions to try to "take issues off the table," and yet a considerable number of issues remain, which are substantial roadblocks to a global resolution.

4. On at least five separate occasions, the Debtors and GenMA have proposed target closing deadlines by which all parties would commit to closing: first on or before December 17, 2017, next on December 30, 2017, then on January 19, 2018, then on January 31, 2018, and then on February 28, 2018. Most recently, on March 1, 2018, the Debtors and GenMA proposed once again to commit to close by March 15, 2018, with a schedule of intervening milestones, and to do whatever is necessary to close by that time. As of the filing of this Motion, the Debtors, GenMA and the GenMA Owner Lessors remain in active discussions. Unfortunately, the pace of negotiations and the resolution of outstanding points are not proceeding as expeditiously as they should.

5. The Debtors and GenMA stand ready to meet and negotiate anytime, anywhere, with principals with settlement authority (together with their advisors), to finalize all open points, complete definitive documentation, and consummate the settlement. The Debtors and GenMA are clearly incentivized to consummate the GenMA Settlement on a fast track, and do whatever it takes to do so. The Debtors and GenMA are willing to work reasonably and around the clock—as they have attempted to do to date—with the GenMA Owner Lessors to resolve these issues. But the time has come for all parties to put all issues on the table for expeditious, good faith resolution, close the GenMA Settlement, and move forward with creating value at GenMA, for the benefit of the GenMA Owner Lessors and the Debtors and their stakeholders.

6. Thus, the Debtors file this Motion because they believe the Court's assistance is necessary to facilitate the timely consummation of the GenMA Settlement as provided under each of the Confirmation Order (*see* ¶¶ 90–93) and the GenMA Settlement Order (as defined herein). To that end, the Debtors ask this Court to enter an order appointing a mediator and directing the Debtors, GenMA, and the GenMA Owner Lessors to engage in good faith,

expeditious negotiations with the mediators' assistance so as to consummate the GenMA Settlement by March 15, 2018.

## Relief Requested

7. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) directing the Debtors, GenMA, and the GenMA Owner Lessors to engage in good faith, expeditious negotiations so as to consummate the GenMA Settlement by March 15, 2018, unless otherwise extended by agreement of the GenMA Settlement Parties, (b) appointing a mediator to work with the GenMA Settlement Parties to help them meet this deadline, and (c) granting related relief.

## Jurisdiction, Venue, and Procedural Background

8. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory bases for the relief requested in this Motion are sections 105(a), 363(b), and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 9019, and rule 9013-1(b) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

10. On June 14, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 4]. As of the date hereof, no party has requested the appointment of a trustee or examiner in these chapter 11 cases, and no committee has been appointed under section 1102 of the Bankruptcy Code. A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Mark A. McFarland in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed on June 14, 2017 [Docket No. 19].

**Background**

11. On December 12, 2017, the Court entered an order confirming the Plan, including authorization for the Debtors to pursue and implement the GenMA Settlement, at the conclusion of the hearing. *See* Confirmation Order [Docket No. 1250]. The Confirmation Order provides, among other things, that the GenMA Settlement Parties shall "cooperate in good faith to negotiate definitive documentation consistent with the GenMA Settlement Term Sheet . . . and pursue consummation of the GenMA Settlement." *Id.* at ¶ 35. After entry of the Confirmation Order, the GenMA Settlement Parties began discussing the process to effectuate the GenMA Settlement contemplated in the GenMA Settlement Term Sheet.

12. Certain of the GenMA Settlement Parties required additional direction from the Court in order to consummate the GenMA Settlement. On January 18, 2018, the Court entered the *Amended Order (I) Authorizing and Directing Certain actions in Furtherance of the GenMA*

*Settlement, (II) Estimating U.S. Bank's Claims at Zero, and (III) Granting Related Relief* [Docket No. 1331] (the "GenMA Settlement Order"), which provided such direction.

13. Since the entry of the Confirmation Order, the Debtors and GenMA have engaged in good faith with the GenMA Owner Lessors to document the terms set forth in the GenMA Settlement Term Sheet, which provides for a limited, contained set of amendments to existing agreements and the drafting of specific additional documents. The GenMA Settlement Term Sheet does not provide for, or require, a full-blown re-negotiation of the sale/leaseback documents. Consistent with this limited scope, the Debtors and GenMA initially proposed closing the GenMA Settlement as soon as possible after entry of the Confirmation Order, initially targeting December 18, 2017, and then December 31, 2017, for closing. The GenMA Owner Lessors, however, did not believe that they could commit to close by either date. As a result, the parties agreed to an allocation of drafting responsibilities and targeted the week of January 7, 2018, to exchange first drafts of the various documents.

14. The Debtors and GenMA then targeted January 19, 2018—two business days after the anticipated entry of the GenMA Settlement Order—for closing. In that context, the GenMA Settlement Parties ultimately agreed to "use commercially reasonable efforts to consummate the GenMA Settlement no later than January 31, 2018" as set forth in the GenMA Settlement Order. However, during the months of January and February, the GenMA Settlement Parties struggled to reach definitive documentation concerning cash management issues, restrictive covenants, reserve accounts, among other issues, partially as a result of disputes concerning interpretation of the GenMA Settlement Term Sheet. The Debtors and GenMA believe there are likely other unresolved, material business points. They cannot say for certain,

7

as the parties still have had difficulty assembling a definitive list of all outstanding issues between them.

15. Over a month has passed since the January 31, 2018 milestone, and the GenMA Settlement Parties are still far from executing definitive documentation to consummate the GenMA Settlement. And although the parties continue engaging in discussions, there needs to be much more discipline on the process that will result in timely consummation. Accordingly, the Debtors believe it is prudent and in the best interests of their estates to seek the appointment of a mediator and an order directing the GenMA Settlement Parties to close the GenMA Settlement no later than March 15, 2018.

## Basis for Relief

### I. The Court Should Direct the GenMA Settlement Parties to Close the GenMA Settlement No Later Than March 15, 2018.

16. The Court is empowered to grant the relief requested herein. Section 1142(b) of the Bankruptcy Code provides that a "court may direct the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of a plan." *See In re CTLI, LLC*, 528 B.R. 359, 364 (Bankr. S.D. Tex. 2015) (noting that section 1142(b) authorizes courts "to order third parties to cooperate in the consummation of a bankruptcy plan"); *In re Jorgensen*, 66 B.R. 104, 108 (B.A.P. 9th Cir. 1986) (finding that the bankruptcy court had authority pursuant to section 1142(b) of the Bankruptcy Code to appoint marketing and disbursing agents to effectuate the plan); *Matter of Coral Air, Inc.*, 40 B.R. 979, 982 (D.V.I. 1984) (finding that section 1142 grants the bankruptcy court power to direct any party to perform any act necessary to consummate the plan). Article XII of the Plan likewise authorizes the Court to "enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and

8

other agreements or documents created in connection with the Plan or the Disclosure Statement." Article XII further authorizes the Court to "issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan." *See also* Confirmation Order ¶ 146 ("This Court retains jurisdiction over these Chapter 11 Cases, all matters arising out of or related to these Chapter 11 Cases and the Plan, the matters set forth in Article XII, and other applicable provisions of the Plan."). The Court has the authority to direct the GenMA Settlement Parties to comply with the GenMA Settlement Order, which provides that "the GenMA Settlement Parties shall use commercially reasonable efforts to consummate the GenMA Settlement." GenMA Settlement Order ¶ 3.

17. Closing the GenMA Settlement is necessary to effectuate the Plan—indeed it is a condition precedent to substantial consummation of the Plan and the Debtors' emergence from bankruptcy. Thus, directing the GenMA Settlement Parties to close the GenMA Settlement is within the Court's 1142(b) powers. Courts in this and other districts routinely enter scheduling orders setting deadlines to ensure the case moves forward expeditiously. *See, e.g., Agreed Amended Scheduling Order Related to Motion to Estimate the Owner Lessor Plaintiffs' Claims* [Docket No. 246].

18. In addition, section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. Pursuant to section 105(d)(2) of the Bankruptcy Code, "the court may, on its own motion or on the request of a party in interest. . . issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically. . . ." Directing the GenMA Settlement

Parties to close the GenMA Settlement no later than March 15, 2018 would ensure that these chapter 11 cases proceed expeditiously and economically toward consummation of the Plan.

19. The Bankruptcy Code, Fifth Circuit precedent, the Confirmation Order, the Plan, and the GenMA Settlement Order authorize the Court to direct the GenMA Settlement Parties to close the GenMA Settlement embodied in the Plan. The GenMA Settlement, which resolves pre-Confirmation disputes related to pre-Confirmation actions, is integral to the Plan—indeed, consummation of the GenMA Settlement is a condition precedent to consummation of the Plan. Thus, the Court is authorized to enter an order to effectuate the GenMA Settlement, and may direct the GenMA Settlement Parties to take actions necessary to effectuate the GenMA Settlement.[3]

## II. The Court Should Appoint a Mediator to Aid the GenMA Settlement Parties in Identifying and Resolving Open Issues in Connection with the GenMA Settlement.

20. The Debtors believe that mediation of the outstanding issues in the GenMA Settlement is the optimal way to close the GenMA Settlement contemplated in the Plan and will remove this obstacle from the Debtors' emergence from bankruptcy. Appointing a mediator would ensure that these chapter 11 cases proceed expeditiously and economically toward consummation of the Plan. Sections 105(a) and 363(b) of the Bankruptcy Code likewise authorize the Court to appoint such mediator under the circumstances. *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011).

21. The Debtors believe that immediately appointing a mediator and directing the Debtors, GenMA, and the GenMA Owner Lessors into mediation will impose discipline on the process and help the GenMA Settlement Parties resolve outstanding issues, close the GenMA

---

[3] *See In re Enron Corp. Secs.*, 535 F.3d 325, 335-36 (5th Cir. 2008) (holding that 28 U.S.C. § 1334(b) satisfied where the subject matter related to pre-confirmation conduct and antagonism between parties) (citing *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 389-90 (5th Cir. 2001)).

Settlement in the near term, and if necessary, report to the Court on the parties' progress and positions if they are unable to reach agreement on definitive documentation.  Given the need to proceed expeditiously, the Debtors and GenMA would welcome and in fact would request the appointment as mediator of a bankruptcy judge in the Southern District of Texas.

## Emergency Consideration

22.     In accordance with Bankruptcy Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion.  The GenMA Settlement Parties have been working diligently towards closing the GenMA Settlement, have reached an impasse on several issues, and have no assurances that the GenMA Settlement will be consummated in the very near term.  As set forth herein, GenMA accrues interest at a rate of approximately $100,000 for each day that the GenMA Settlement does not close.  Accordingly, the Debtors respectfully submit that the Court should grant the relief requested herein on an emergency basis.

## Notice

23.     The Debtors will provide notice of this Motion to:  (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Trust Company, as indenture trustee for the GenOn Energy, Inc. 7.875% Senior Notes due 2017, 9.50% Senior Notes due 2018, and 9.875% Senior Notes due 2020, (collectively, the "GenOn Notes"), and counsel thereto; (d) Wilmington Savings Fund Society, FSB, as successor indenture trustee for the GenOn Americas Generation, LLC 8.50% Senior Notes due 2021 and 9.125% Senior Notes due 2031, (collectively, the "GAG Notes"), and counsel thereto; (e) NRG, as administrative agent under the Debtors' secured prepetition revolving facility due 2018 (the "Revolver"), and counsel thereto; (f) U.S. Bank National Association, as collateral trustee under the Revolver; (g) Davis

Polk & Wardwell LLP, as counsel to an ad hoc committee of holders of GenOn Notes; (h) Quinn Emanuel Urquhart & Sullivan, LLP, as counsel to an ad hoc steering committee of holders of GAG Notes; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (m) the state attorneys general for states in which the Debtors conduct business; (n) the Lease Indenture Trustees; (o) the Pass Through Trustees; (p) the GenMA Owner Lessors; and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that the foregoing notice is sufficient and appropriate under the circumstances and that no other or further notice is required.

## No Prior Request

24. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of this page intentionally left blank*]

WHEREFORE, the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

| | |
|---|---|
| Dated:  March 5, 2018<br>Houston, Texas | */s/ Zack A. Clement* |

Zack A. Clement (Texas Bar No. 04361550)
**ZACK A. CLEMENT PLLC**
3753 Drummond Street
Houston, Texas 77025
Telephone:   (832) 274-7629
Email:           zack.clement@icloud.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
David R. Seligman, P.C. (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
W. Benjamin Winger (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:           james.sprayregen@kirkland.com
                    david.seligman@kirkland.com
                    steven.serajeddini@kirkland.com
                    benjamin.winger@kirkland.com

-and-

AnnElyse Scarlett Gibbons (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:           annelyse.gibbons@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

      I certify that on March 5, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                              */s/ Zack A. Clement*
                                              Zack A. Clement