**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| GENON ENERGY, INC., *et al.*,[1] | Case No. 17-33695 (DRJ) |
| Debtors. | (Jointly Administered) |

**EXPEDITED MOTION OF THE NATURAL GAS LITIGATION MIDWEST**
**PLAINTIFFS TO STAY OR DENY DEBTORS' CLAIM OBJECTION**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas  Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091). The Debtors' service address is: 804 Carnegie Center, Princeton, New Jersey 08540.

62742015.6

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT BEFORE THE REQUESTED HEARING DATE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EXPEDITED RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE A RESPONSE BEFORE THE HEARING.**

**AN EXPEDITED HEARING HAS BEEN REQUESTED ON THIS MATTER ON MARCH 30, 2018 at 11:00 AM (CT) BEFORE THE HONORABLE DAVID R. JONES, 515 RUSK STREET, COURTROOM 400, HOUSTON, TEXAS 77002.**

1.    Claimants[2] move for an order applying the prior pending action doctrine to Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation) (Doc. 1481) (the "**Claim Objection**") awaiting the resolution of certain prior litigation (the "**MDL Litigation**") that remains pending before the United States District Court for the District of Nevada (the "**MDL Court**"),[3] in which Debtors RRI Energy Services, LLC,[4] f/k/a Reliant Energy Services, Inc.

_____

[2] The Claimants are Heartland Regional Medical Center, Northwest Missouri State University, Prime Tanning Corporation (together, the "**Missouri Plaintiffs**"); Learjet, Inc., Topeka Unified School District 501 (together, the "**Kansas Plaintiffs**"); NewPage Wisconsin System Inc. (n/k/a Verso Minnesota Wisconsin LLC), Arandell Corp., Merrick's, Inc., Sargento Foods, Inc., Ladish Co., Inc. (n/k/a ATI Ladish LLC), Carthage College, and Briggs & Stratton Corporation (together, the "**Wisconsin Plaintiffs**") (collectively, the "**Claimants**").

[3] The Judicial Panel on Multidistrict Litigation assigned this case to the U.S. District Court for the District of Nevada for pretrial proceedings.  Pursuant to MDL proceeding rules, the District of Nevada will transfer the cases back to their original federal courts in Kansas, Missouri, and Wisconsin for trial.  *See* 28 U.S.C. § 1407 (permitting transfer and consolidation

62742015.6

("**RRI**"), and GenOn Energy, Inc., f/k/a Reliant Energy, Inc. ("**GenOn**") (collectively, the

"**MDL Debtors**") are co-defendants.  In support, Claimants state as follows:

## INTRODUCTION

2.      The MDL Debtors' Claim Objection is an attempt to evade the Court's July 26,

2017 Stay Relief Order (defined below) and drag the merits of a thirteen-year- old multi-

defendant, multi-district antitrust action into this Court for adjudication.  In the pending MDL

Litigation, Claimants have taken over 150 depositions and reviewed millions of documents

produced by the MDL Defendants, including the MDL Debtors and nine Defendant Groups who

are not parties to this bankruptcy.[5]  In addition, the MDL Court has evaluated extensive expert

reports, exhibits, and testimony about the natural gas market, and its impact on natural gas prices

between 2000 and 2002.  Orders in the MDL Litigation have been appealed several times to the

Ninth Circuit Court of Appeals, and once to the United States Supreme Court.  Claimants have

been successful in all appeals and have defeated every one of Defendants' fully dispositive

motions.

3.      Acknowledging the complexity and longevity of the MDL Litigation, this Court

previously lifted the automatic stay so that the parties could litigate the issues, and liquidate the

---

of cases for coordinated "pretrial proceedings"); *see also* Fed. Prac. & Proc. § 3866.2 ("At the conclusion of pretrial proceedings in the transferee court, Section 1407(a) requires that the Panel remand those cases that have not been terminated to the transferor courts for trial.").

[4] Bankruptcy Case No. 17-33750.

[5] The term "**MDL Defendants**" refers to all the defendants and co-conspirators in the MDL Litigation, including but not limited to Defendants ONEOK Inc., ONEOK Energy Marketing and Trading Company, L.P., Kansas Gas Marketing Company, The Williams Companies, Inc., Williams Merchant Services Company, Inc., Williams Energy Marketing & Trading, American Electric Power Company, AEP Energy Services, Inc., Duke Energy Corporation, Duke Energy Trading and Marketing Company, L.L.C., Dynegy Marketing & Trade, El Paso Corporation, El Paso Merchant Energy, L.P., CMS Energy Corporation, CMS Energy Corporation, CMS Marketing Services & Trading Company, CMS Field Services, Reliant Energy, Inc., Reliant Energy Services, Inc., Coral Energy Resources, L.P., Xcel Energy, Inc., and e prime, Inc.  Fourteen of these companies have their principal places of business in states other than Texas and are outside of the Court's subpoena power. Fed. R. Civ. P. 45(c).

3

claims, that underlie the Claim Objection in the MDL and Trial Courts.  The MDL Debtors now renege on their agreement on stay relief, asking this Court to reverse its stay relief order, take the merits issues away from the MDL Court (including several matters that would be resolved by jury trial if the claims are liquidated as the Stay Relief Order contemplated), and attempt to try the merits of Claimants' antitrust claims here in five summary evidentiary proceedings.  Doing so would represent not only an enormous prejudice to Claimants and a substantial waste of resources, but also implicates important issues of judicial comity, including non-interference with the MDL Court and appellate court rulings.  To address these concerns, the prior pending action doctrine provides that a federal court should defer to an earlier-filed action on the same subject matter.  This doctrine dictates that the Claim Objection be either denied or stayed until the MDL Court fully adjudicates the merits of Claimants' claims.  Accordingly, this Court should apply the prior pending action doctrine and either deny or stay the Claim Objection.[6]

## JURISDICTION

4.       The United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "**Amended Standing Order**").  This Motion is a core

---

[6] The Midwest Plaintiffs concurrently filed a Motion to Enforce the Court's Agreed Order Lifting the Automatic Stay ("Motion to Enforce the Court's Order").  The reasons for enforcing the Court's Stay Relief Order also support deferring trial of these claims to their respective trial courts pursuant to MDL procedures.  Those reasons include that the seriatim trials requested by the MDL Debtors would (1) require the participation of all MDL Defendants and other co-conspirators, including dozens of parties over whom the Court lacks jurisdiction and hundreds of witnesses who are beyond the Court's subpoena power; (2) consolidate trials of different actions arising from different states under different state laws; (3) create havoc on the orderly resolution of the MDL case, imposing duplicative and unnecessary litigation; and (4) lead to inconsistent results that the Judicial Panel on Multidistrict Litigation's MDL process was meant to avoid.  In the interest of brevity, the Midwest Plaintiffs incorporate all arguments in their Motion to Enforce the Court's Order here by reference.

62742015.6

matter pursuant to 28 U.S.C. § 157.  Venue to consider the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.[7]

### FACTUAL AND PROCEDURAL BACKGROUND

5.      During 2000-2002, MDL Debtors in collusion with the MDL Defendants manipulated prices of natural gas.  MDL Debtors' and their co-conspirators' unlawful actions led to investigations by the United States Department of Justice and the Commodities Futures Trading Commission ("CFTC"), and substantial civil and criminal penalties being imposed on all ten MDL Defendant Groups.  As a result of their unlawful conduct, MDL Debtors paid $18 million in civil penalties to the CFTC, and one of their former natural gas traders pled guilty to criminal charges.

6.      Claimants are commercial and industrial end-users of natural gas in Kansas, Missouri, and Wisconsin.  They bring state-law antitrust claims against MDL Debtors, and nine other Defendant Groups who are absent from this bankruptcy, who all participated in a nationwide conspiracy to manipulate natural gas prices in 2000-2002.  The MDL Defendants' conduct caused Claimants to pay higher prices for natural gas than they would have paid absent the MDL Defendants' conspiracy to manipulate prices.

7.      On June 14, 2017 (the "**Petition Date**"), over a decade after the natural gas cases were consolidated in the MDL proceedings, GenOn Energy, Inc., and various affiliates and subsidiaries, including the MDL Debtors, filed Chapter 11 Petitions in this Court (Doc. 1).  A Motion for Joint Administration (Doc. 2) was filed and granted (Doc. 4), with all of the cases now being jointly-administered under this case number.

---

[7] The Midwest Plaintiffs contend that jurisdiction and venue for the substantive Objection (as defined herein) itself is not proper in this District.  The Midwest Plaintiffs also contend that, with respect to the substantive Objection, the Court cannot enter a final order or judgment consistent with Article III of the United States Constitution in any proceeding on the substantive Objection and designated as core under Section 157(b) of Title 28.

62742015.6

8.      Less than a month into the case, on July 12, 2017, Claimants filed three related motions to lift the automatic stay.  On July 26, 2017, the Court entered an agreed order granting relief from the automatic stay so that Claimants and the MDL Debtors could proceed with all facets of the Ninth Circuit Appeals and the MDL Litigation.  (Doc. 296) (the "**Stay Relief Order**").  The Stay Relief Order provides, in pertinent part, that "All pending and future matters in or related to the MDL Suits, including, but not limited to, appeals, trials, post-trial motions, discovery, settlements, and dispositive motions, and remand to the applicable transferor courts whether prosecuted by the Claimants, the MDL Debtors, or another party to the MDL Suits, are authorized to proceed independently of these chapter 11 cases." (Stay Relief Order, at ¶ 4).

9.      On or about September 14, 2017 (almost two months after the stay relief Order had been entered), Claimants filed nineteen separate unliquidated proofs of claim (Claim Nos. 1213, 1214, 1215, 1216, 1217, 1218, 1219, 1220, 1221, 1223, 1225, 1226 in the RRI Bankruptcy and Claim Nos. 1191, 1192, 1193, 1194, 1195, 1196, and 1197 in the GenOn Bankruptcy) (collectively, the "**Proofs of Claim**") for amounts owed to Claimants in connection with the claims and causes of action asserted in the MDL Litigation, filed only under compulsion of the Bar Date and "to protect the Claimant from any asserted forfeiture of claims by reason of said bar date," reserving all rights.  (See, e.g., GenOn Claim Number 744, Exhibit A, at 7.).

10.     On November 20, 2017, the MDL Court entered an order staying the MDL Litigation pending the outcome of two ongoing appeals: one involving the dismissal of one non-Debtor defendant, which has been fully briefed and argued on February 16, 2018, and one involving the denial of class certification, which is fully briefed and should be argued in the Ninth Circuit within the next three to six months.

62742015.6

11.     On December 12, 2017, the Court confirmed the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "**Plan**"), which calls for payment in-full to all unsecured creditors with allowed claims.  (Doc. 1250, Ex. A, at pp. 23-27).

12.     The MDL Debtors filed their Claim Objection on February 26, 2018, seeking to disallow the Proofs of Claim on their merits.  In order to adjudicate the Claim Objection, this Court would be required to hold a trial on Claimants' state-law antitrust claims.  The MDL Debtors propose to separate the trial into five different proceedings, seeking to try first their defenses on a stand-alone basis, in isolation from any other issues in the cases.

13.     The MDL Debtors' request for seriatim summary proceedings is part of a larger pattern that began in the MDL Litigation.  There, Defendants, including the MDL Debtors, filed almost more than 30 summary judgment motions and numerous motions to strike Plaintiffs' expert witnesses (nearly all of which were entirely denied).  Despite all these efforts, Defendants, including MDL Debtors, have failed in their attempts to prevent trials of the Midwest Plaintiffs' Claims, which will proceed in the transferor courts in Kansas, Missouri, and Wisconsin.[8]

14.     Of significance here, the MDL Court denied the MDL Defendants' motion for summary judgment on conspiracy.  In its Order, the MDL Court noted that "the evidence of wash trades *between Defendants*—which Defendants do not appear to dispute—implies an antitrust conspiracy," and held that juries in the three states must decide whether the ten Defendant

---

[8] In the ordinary course of civil litigation, once a defendant's motion for summary judgment is denied, the case is submitted to a jury trial, in which all of the plaintiff's claims and defendant's defenses are tried.  *See Wrights Well Control Servs. LLC v. Oceaneering Int' Inc.*, Civil Action No. 15-1720, 2016 WL 740357, at * 2 (E.D. La. Feb. 25, 2016) ("Separate trials, however, are the exception, not the rule.") (citing *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993)).  The issues the MDL Debtors propose to bifurcate, especially those related to the statutes of limitations, antitrust conspiracy, and damages, will require dozens of witnesses, hundreds if not thousands of exhibits, hours of phone recordings of discussions among MDL Defendants' traders, and days of expert testimony.  All of those issues are slated to be resolved by jury trial in the respective transferor courts.

Groups conspired to violate antitrust laws. *See* Order, 2:03-CV-01431-RCJ-PAL, ECF 2957 at 16 (emphasis in original).[9]

15.     In addition, the MDL Court considered the Kansas and Missouri statutes of limitations and conspiracy, all issues that Debtors seek to try on summary evidentiary hearings, at the summary judgment stage.  The MDL Court denied defendants' motions for summary judgment on the statutes of limitations.  In rejecting the MDL Defendants' summary judgment arguments as to the statutes of limitations, the Court was also noted that "[a] reasonable jury could decide the issue in Plaintiffs' favor," and held that juries and Kansas in Missouri must decide this issue. *Id.* at 20.

16.     The Court should deny the MDL Debtors' improper request to try Claimants' antitrust claims in piecemeal, summary proceedings in this forum, when the identical claims and issues are already pending and approaching trial in the MDL Court.  The MDL Debtors' request would intrude on Claimants' Constitutional rights and the jurisdiction and orders of the MDL Court, the Ninth Circuit Court of Appeals, the United States Supreme Court, and the Judicial Panel on Multidistrict Litigation.  Such intrusion would be particularly inappropriate here, where the MDL Court has been presiding over this matter for over a decade and where juries in the respective transferor trial courts are slated to consider all of the questions raised in the MDL Debtors' Objection.

---

[9] In addition, the MDL Court found that defendants' alleged pervasive illegal market manipulation does not fall within the "wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *See Order* (denying defendants' motion to dismiss for failure to state a claim), *Arandell Corp., et al. v. Xcel Energy, Inc., et al.*, Case No. 2:07-cv-01019-PMP-PAL, Doc. No. 179.

62742015.6

**RELIEF REQUESTED**

17.     Enter an Order attached as <u>Exhibit A</u> applying the prior pending action doctrine and denying the Claim Objection, without prejudice, until such time as the MDL Litigation, which will address all the issues raised in the Claim Objection, is fully concluded.

18.     Alternatively, enter an Order applying the prior pending action doctrine and staying the Claim Objection until such time as the MDL Litigation which will address all the issues raised in the Claim Objection, is fully concluded.

19.     Claimants do not waive their rights to seek further relief as to the MDL Litigation in subsequent motions, or to otherwise oppose the MDL Debtors' pending motions.

20.     Claimants also request expedited consideration for March 30, 2018, at 11:00 a.m., which is the same time the Debtors' motion to establish a protocol to address their objection to Claimants' claims is set for hearing.  This Motion directly relates to the relief sought by the Debtors and for judicial economy should be heard at the same time.   The arguments in the Motion will be argued in response to the Debtors' protocol motion and proposes alternative relief for the Court to consider.

21.     Claimants further request such relief as the Court deems just and proper.

**ARGUMENT**

**I.      The Prior Pending Action Doctrine Requires That the Claim Objection Be Denied or Stayed Pending Resolution of the MDL Litigation**

22.     When two pending federal court actions involve the same claims and parties, the first-to-file rule, sometimes referred to as the prior pending case doctrine, applies.  "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 693 (5th Cir. 1999).  The rule is based in

62742015.6

"principles of comity and sound judicial administration." *Id*. (internal citations omitted). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id*. (quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)).

23.     Courts around the country routinely apply the doctrine, noting that the appropriate procedure is to stay, dismiss, or transfer later-filed actions, where, as here, the later-filed case seeks to resolve issues identical to issues pending in a previously-filed case. *See*, *e.g.*, *O'Hare International Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972) ("It is well established in this Circuit that where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court.  The rule is that the first federal district court which obtains jurisdiction of parties and issues should have priority and **the second court should decline consideration of the action until the proceedings before the first court are terminated**.") (internal citations and quotations omitted) (emphasis added); *Bradley v. Kelly*, 479 F. Supp. 2d 281, 284 (D. Conn. 2007) ("The prior pending action doctrine is one of federal judicial efficiency and provides that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second.  A district court may opt either to stay or to dismiss the subsequently-filed case in deference to the earlier-filed case." (internal citations and quotations omitted)); *Briarpatch Ltd. L.P. v. Thomas*, 265 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) ("The 'prior action pending' doctrine prevents proceeding in federal court with a second lawsuit which is duplicative of an earlier pending lawsuit over the same subject matter.").

62742015.6

24.     Bankruptcy courts also use the doctrine to defer to underlying district court proceedings.  For example, in *In re Com21 Inc*., a prior patent infringement suit was pending when one party to the patent suit filed an adversary proceeding in bankruptcy seeking a declaratory judgment on a key issue in the patent suit.  357 B.R. 802, 807-09 (C.D. Cal. 2006).  Given the unity of issues and parties, the bankruptcy court applied the first-to-file rule to stay the adversary proceeding, pending resolution of the first-filed patent infringement suit.  *Id.* at 810.

25.     The prerequisites to applying the first to file rule are: (1) the existence of a chronologically first-filed suit; (2) involving the same issues; and, (3) the same parties.  *Id*.  Though there are exceptions to the rule, "in light of the important interests being served, the rule should not be disregarded lightly."  *Id*. at 807.[10]  "[A]bsent a compelling exception, the second court should give deference to the first-filed court."  *Id.* at 809 (internal citation omitted).

26.     There is no question that the MDL Litigation, which has been pending for more than thirteen years, constitutes a "prior pending action."  The bases for the Claim Objection are identical to the claims and issues being addressed in the MDL Litigation.  The Claim Objection points to no procedural defect in the Proofs of Claim, but simply seeks to attack the merits of the underlying claims by asserting that (1) the claims are time barred, (2) the Claimants cannot prove damages, and (3) the MDL Debtors "didn't do it."  Those exact same issues have been actively litigated in the MDL Litigation and are the subject of previous orders entered by the MDL Court, the Ninth Circuit Court of Appeals, and the United States Supreme Court over the course of more than a decade.[11]

---

[10] Courts have recognized equitable exceptions not applicable here, here the first-filed case was filed in bad faith, perhaps for purposes of forum shopping, or where a later-filed case has progressed so far that efficiency suggests that the later-filed case should be allowed to proceed.

[11] Debtors erroneously contend that certain Claimants' claims should be invalidated because GenOn, Inc. was previously dismissed from certain MDL cases for lack of personal

27.     Indeed, in their Claim Objection, the MDL Debtors acknowledge that Claimants'

Proofs of Claim are "predicated" on the same claims that are pending in the MDL Litigation.

(Claim Objection, at ¶¶ 1-2, 10-11) ("The Proofs of Claim are predicated on [Claimants'] Claims

in the [MDL Litigation]."). Despite the pendency of the MDL Litigation, the MDL Debtors ask

this Court to usurp the MDL Court's authority and, on a summary basis, take over and decide

issues that the parties have litigated in another forum for more than thirteen years. (Claim

Objection, at ¶ 11) ("the remaining issues concerning the Proofs of Claim are ripe for decision by

the Court under section 502 of the Bankruptcy Code."). The prior pending action doctrine exists

to avoid exactly this scenario.

28.     Further, the Claim Objection is particularly inappropriate in light of the Court's

Stay Relief Order contemplating that all matters related to the MDL Litigation would be handled

by the MDL Court. Stay relief was granted to permit the "adjudication of matters related to the

claims and defenses set forth in the MDL Suits, including, without limitation, reducing such

claims to judgment and the resolution of any issue on appeal now or in the future, provided

Claimants shall take no action to collect, liquidate, or foreclose against any of the Debtors'

property during these chapter 11 cases absent a further order of this Court." (Stay Relief Order,

at ¶ 6).

---

jurisdiction. Debtors misstate the facts, as all Wisconsin Claimants have pending claims against
GenOn. After remand from the United States Supreme Court, the MDL Court did initially grant
GenOn, Inc.'s motion to dismiss for lack of personal jurisdiction, but later reconsidered its
earlier Order and, relying on the Ninth Circuit's personal jurisdiction rulings in the MDL, denied
GenOn's jurisdictional motion. (MDL No. 2416 (May 24, 2016), at 6, 14.) That Order denied
GenOn's jurisdictional challenge *in its entirety*, as to all claims by all Plaintiffs. (*Id.*) The Court
did not adopt Debtors' strained waiver argument, and if Debtors thought that Order was issued in
error, Debtors have made no attempt to seek reconsideration in the nearly two years since the
Order was issued.

In addition, independent of their direct claims against GenOn, Claimants may seek
collection from GenOn of any judgment against Debtor RRI Energy Services, LLC, under alter
ego, veil piercing or other theories. Their claims against GenOn preserve their right to do so,
pending resolution of these issues in the MDL Court.

29.     The Stay Order constitutes law of the case and the MDL Debtors cannot circumvent it via the Claim Objection. *Matter of England*, 153 F.3d 232, 235 (5th Cir. 1998) ("Under the law-of-the-case doctrine, a court follows its prior final decisions in the case as the law of that case, except for a few narrow exceptions."); *In re Polarshield, Inc.*, No. 02-36611-H3-7, 2007 WL 2746774, at *2 (Bankr. S.D. Tex. Sept. 18, 2007) (same); *In re Washington*, 468 B.R. 846, 851 (Bankr. W.D. Mo. 2011), *aff'd sub nom. Washington v. Deutsche Bank Nat. Tr. Co.*, No. 11-01278-CV-FJG, 2012 WL 4483798 (W.D. Mo. Sept. 28, 2012) (stay relief orders constitute law of the case).

## II.     Each Issue Raised In Debtors' Claim Objection Is Already Being Litigated In The MDL Court.

30.     Debtors' Claims Objection and related scheduling proposal asks this Court to resolve a series of factual and legal issues that will be resolved in the long-standing MDL Litigation.   There is no legitimate basis for the MDL Debtors' attempt to renege on and undermine the agreed Stay Relief Order and the MDL procedures by asking this Court to try those issues through five separate summary proceedings.   And, under the first-to-file rule, given the overlap of issues and parties with the much earlier filed MDL Litigation, this Court should defer to the MDL Court for the ultimate liquidation of Claimants' claims.

### A.     The MDL Debtors' violation of various antitrust laws is the central issue in the MDL Litigation

31.     First, the MDL Debtors' assertion in the Claim Objection that they did not violate various antitrust laws goes to the heart of the issues in the MDL Litigation. (Claim Objection, at ¶ 26) (asserting that "Neither GenOn nor RRI entered into any combination or conspiracy with the purpose or effect of manipulating prices.   The [Claimants] thus cannot prove the most *fundamental element* of their claims…").   Debtors raised these same arguments in a motion for summary judgment in the MDL Litigation, and the MDL Court denied their motion, finding that

62742015.6

there is ample evidence of conspiracy and holding that the jury must decide Debtors' liability. (Order, ECF 2957 (Aug. 22, 2017), at 15-17 (finding, among other things, that "It is virtually impossible that industry members such as Defendants did not realize the anticompetitive effects of the wash trade they were engaging in with one another").

32.     The ultimate issue of whether the MDL Debtors violated antitrust laws has already been ruled upon by the MDL Court and reserved for trial.  Once the MDL Court remands the natural gas cases to their respective MDL transferor courts for trial (as the MDL Court has advised it will recommend after resolution of the appeals), the juries in the trial courts will determine whether all of the Defendants' conduct (not just Debtors' conduct) violates the respective state-antitrust laws of Kansas, Missouri, and Wisconsin.  Trying the cases here would require this Court to apply separately the laws of each state in three separate trials for each applicable issue, with all Defendants present, would require testimony and evidence from countless witnesses and entities not parties here, and would lead to duplicative and unnecessary litigation.

**B.      All of the Claimants have claims pending in the MDL Litigation.**

33.     The MDL Debtors also assert that certain Claimants lack standing to pursue claims against GenOn because GenOn (f/k/a Reliant Energy, Inc.) was previously dismissed from certain cases in the MDL Litigation for lack of personal jurisdiction.[12]  This argument fails.

34.     First, Debtors' claims misstate the MDL Court's rulings. After remand from the United States Supreme Court, the MDL Court did initially grant GenOn, Inc.'s motion to dismiss for lack of personal jurisdiction, but later reconsidered its earlier Order and, relying on the Ninth Circuit's personal jurisdiction rulings in the MDL, denied GenOn's jurisdictional motion. (MDL

---

[12] This allegation does not affect any Claimants' claims in the Kansas or Missouri cases, and only affects certain Claimants in the Wisconsin case.

62742015.6

No. 2416 (May 24, 2016), at 6, 14.)  That Order denied GenOn's jurisdictional challenge *in its entirety*. It did not parse out individual Plaintiff's claims, but denied GenOn's motion as to all claims by all Plaintiffs. (*Id.*)  Contrary to Debtors' arguments, MDL Court *did not* adopt the strained waiver argument Debtors make here; rather the Court reinstated all Plaintiffs' claims against GenOn in the Wisconsin Actions. (*Id.*)

35.     Second, even if Debtors' claims were true (they are not), they amount to nothing, as the Wisconsin courts may adjudicate the claims of all Wisconsin Plaintiffs under the doctrine of pendant personal jurisdiction. Defendants admit that Wisconsin has personal jurisdiction over GenOn at least with respect to the claims of Wisconsin Plaintiffs Briggs & Stratton and Carthage College. Once personal jurisdiction is established over a defendant, a court may exercise pendant personal jurisdiction over all claims that arise out of the same common nucleus of operative facts, even if personal jurisdiction may not independently exist for the additional claims. *See, e.g.*, *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) ("If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same common nucleus of operative facts as the claim for which jurisdiction exists." (internal quotation omitted); *Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 450 (7th Cir. 2000) (same); *Gen. Elec. Capital Corp. v. Mackzilla, LLC*, No. CV H-15-2425, 2016 WL 1059529, at *5 (S.D. Tex. Mar. 17, 2016) ("Although the Fifth Circuit has not yet addressed pendent personal jurisdiction, this district and every circuit to decide the issue have approved the doctrine." (citations omitted)). As personal jurisdiction over GenOn has been established, the Wisconsin trial court may adjudicate the identical claims

62742015.6

brought by any of the Wisconsin Plaintiffs and Wisconsin putative class members, even under Defendants' erroneous waiver theory.[13]

36.     Finally, in addition to and independently of their direct claims against GenOn, Claimants may seek collection from GenOn of any judgment against Debtor RRI Energy Services, LLC, under alter ego, veil piercing or other theories. *See, e.g.*, *Genscript Corp. v. AA Peptides, LLC*, Civil Action No. 3:10-CV-508-R, 2011 WL 1309805, at 5 (July 1, 2011) ("In parent subsidiary situations, courts have looked to whether the "alter ego" doctrine would justify piercing the corporate veil, whether the litigant corporation acted as an agent of the nonparty corporation in connection with the matter in litigation, whether the litigant corporation could secure materials from the nonparty corporation to meet its own business needs, and whether, by virtue of stock ownership or otherwise, one corporation effectively controls the other. Other corporate connections, such as 'sister' corporations, have also been analyzed with an eye to such considerations.") (quoting Fed. Prac. & Proc. § 2010).   The Wisconsin Plaintiffs' Proofs of Claim against GenOn preserve their right to do so, pending resolution of these issues in the MDL Court.[14]

37.     All issues raised in the Claim Objection will ultimately be determined in the MDL Court (or in the transferor courts after the respective cases are remanded for trial).

---

[13] In addition to their claims as representative plaintiffs, the five Wisconsin Plaintiffs other than Briggs and Carthage may claim against GenOn as class members, should a class be certified.

[14] In any event, this allegation does not affect any Claimants' claims in the Kansas or Missouri cases, and may affect only some, but not all, Claimants in the Wisconsin case, and only with respect to their claims against GenOn (leaving undisturbed all Claimants' claims against Debtor RRI Energy Services, LLC).

62742015.6

### C.   Whether Claimants' claims are time-barred is an issue pending before the MDL Court.

38.     Similarly, the issue of whether the statute of limitations has run was extensively briefed in the MDL Litigation, and the MDL Court sided with Claimants when it denied the MDL Defendants' motions for summary judgment.  As the MDL Debtors acknowledge, whether Claimants' claims are time-barred is an outstanding issue of fact in the MDL Litigation that the MDL Court has determined needs to be determined by a jury at trial.  (Claim Objection, at ¶ 20, fn. 7).

39.     Removing that issue from the MDL Court, and forcing the parties to litigate it here, is inconsistent with both the prior pending action doctrine and judicial economy.

### D.   The extent of Claimants' damages is already at issue in the MDL Litigation.

40.     Lastly, the MDL Debtors also acknowledge that the issue of damages is already being litigated in the MDL Court. (Claim Objection, at ¶ 22).  Those damages issues implicate other parties to the MDL Litigation.  Under governing antitrust law, MDL Defendants, including MDL Debtors, are jointly and severally liable for Claimants' damages. *See United States v. Socony–Vacuum Oil Co*., 310 U.S. 150, 253-54 (1940) (stating that "a conspiracy is a partnership in crime; and an 'overt act of one partner may be the act of all without any new agreement specifically directed to that act'") (citation omitted); *Wilson P. Abraham Construction Corp. v. Texas Industries, Inc*., 604 F.2d 897, 904, n. 15 (5th Cir.1979) ("Antitrust coconspirators are jointly and severally liable for all damages caused by the conspiracy to which they were a party"); *Agron, Inc. v. Lin*, No. CV0305872MMM (JWJX), 2004 WL 555377, at *7 (C.D. Cal. March 16, 2004) ("If Agron can prove that Lum was a member of the conspiracy, he will be liable for more than just the filing of lawsuits.  He will be liable for all of the actions of his co-conspirators . . . .").

62742015.6

41.     Litigating damages issues in this Court, without the presence of all of the defendants in the MDL Litigation, risks inconsistent results and wasting resources by requiring trials on Claimants' state-antitrust law claims in this Court and in their respective trial courts.

## CONCLUSION

The five-step summary adjudication process that MDL Debtors propose is entirely unworkable.  In addition to potentially conflicting with the MDL and Trial Courts and their Orders and rulings, the procedure the MDL Debtors propose would be unnecessary and duplicative, and a potential misuse of time and resources that could lead to inconsistent rulings. Each of the liability and damages questions that the MDL Debtors have asked this Court to examine are before the MDL Court, and should be resolved there.

Here, Debtor has proposed a 100% plan that pays all creditors in full.  Liquidation of all claims is not required for the Effective Date of the MDL Debtors' Plan to occur.  As a result, waiting for the MDL Litigation to run its course presents no impediment to the full implementation of the Plan.   Because there are no special circumstances that warrant deviation from the prior pending action doctrine, this Court should stay all proceedings related to the Claim Objection until the MDL Litigation is fully resolved.

WHEREFORE, Claimants respectfully request that the Court enter an order applying the prior pending action doctrine and either deny the Claim Objection, or stay staying all proceedings on the Claim Objection pending the final outcome of the MDL Litigation, and grant Claimants any other relief to which they may be entitled.

62742015.6

Dated:  March 21, 2018                Respectfully submitted,

                                      POLSINELLI PC

                                      By:  */s/ Trey A. Monsour*
                                      TREY A. MONSOUR
                                      1000 Louisiana Street
                                      Fifty-Third Floor
                                      Houston, Texas 77002
                                      (713) 374-1600
                                      Fax: (713) 374-1601
                                      tmonsour@polsinelli.com

                                      -and-

                                      RUSSEL S. JONES, JR.
                                      JENNIFER GILLE BACON (*admitted pro hac vice*)
                                      ANDREW J. ENNIS (*admitted pro hac vice*)
                                      ANDREW J. NAZAR (*admitted pro hac vice*)
                                      900 W. 48th Place, Suite 900
                                      Kansas City, Missouri 64112
                                      (816) 753-1000
                                      rjones@polsinelli.com
                                      jbacon@polsinelli.com
                                      aennis@polsinelli.com
                                      anazar@polsinelli.com

                                      -and-

                                      ROBERT L. GEGIOS (admitted pro hac vice)
                                      RYAN M. BILLINGS (admitted pro hac vice)
                                      SAMUEL C. WISOTZKEY (admitted pro hac vice)
                                      KOHNER, MANN & KAILAS, S.C.
                                      Washington Building,
                                      Barnabas Business Center
                                      4650 N. Port Washington Road
                                      Milwaukee, Wisconsin 53212
                                      (414) 962-5110
                                      Fax: (414) 962-8725
                                      rgegios@kmksc.com
                                      rbillings@kmksc.com
                                      swisotzkey@kmksc.com

                                      ATTORNEYS FOR THE NATURAL GAS LITIGATION
                                      MIDWEST PLAINTIFFS

19

62742015.6

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of March, 2018, a true and correct copy of the foregoing *Expedited Motion of the Natural Gas Litigation Midwest Plaintiffs to Stay or Deny Debtors' Claim Objection* was served electronically to Debtors' counsel, the U.S. Trustee, and all interested parties by ECF notification from the court, and served by First-Class United States mail, postage prepaid, to the parties who have requested or are entitled to notice in accordance with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, as set forth in the updated Master Service List, dated March 9, 2018 (Docket No. 1506, Exhibit A).

*/s/  Trey A. Monsour*

62742015.6