## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| GENON ENERGY, INC., *et al.*,[1] | Case No. 17-33695 (DRJ) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 1481, 1622, 1623, 1624** |

## DEBTORS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR OBJECTION TO CERTAIN PROOFS OF CLAIM (NATURAL GAS LITIGATION)

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: GenOn Energy, Inc. (5566); GenOn Americas Generation, LLC (0520); GenOn Americas Procurement, Inc. (8980); GenOn Asset Management, LLC (1966); GenOn Capital Inc. (0053); GenOn Energy Holdings, Inc. (8156); GenOn Energy Management, LLC (1163); GenOn Energy Services, LLC (8220); GenOn Fund 2001 LLC (0936); GenOn Mid-Atlantic Development, LLC (9458); GenOn Power Operating Services MidWest, Inc. (3718); GenOn Special Procurement, Inc. (8316); Hudson Valley Gas Corporation (3279); Mirant Asia-Pacific Ventures, LLC (1770); Mirant Intellectual Asset Management and Marketing, LLC (3248); Mirant International Investments, Inc. (1577); Mirant New York Services, LLC (N/A); Mirant Power Purchase, LLC (8747); Mirant Wrightsville Investments, Inc. (5073); Mirant Wrightsville Management, Inc. (5102); MNA Finance Corp. (8481); NRG Americas, Inc. (2323); NRG Bowline LLC (9347); NRG California North LLC (9965); NRG California South GP LLC (6730); NRG California South LP (7014); NRG Canal LLC (5569); NRG Delta LLC (1669); NRG Florida GP, LLC (6639); NRG Florida LP (1711); NRG Lovett Development I LLC (6327); NRG Lovett LLC (9345); NRG New York LLC (0144); NRG North America LLC (4609); NRG Northeast Generation, Inc. (9817); NRG Northeast Holdings, Inc. (9148); NRG Potrero LLC (1671); NRG Power Generation Assets LLC (6390); NRG Power Generation LLC (6207); NRG Power Midwest GP LLC (6833); NRG Power Midwest LP (1498); NRG Sabine (Delaware), Inc. (7701); NRG Sabine (Texas), Inc. (5452); NRG San Gabriel Power Generation LLC (0370); NRG Tank Farm LLC (5302); NRG Wholesale Generation GP LLC (6495); NRG Wholesale Generation LP (3947); NRG Willow Pass LLC (1987); Orion Power New York GP, Inc. (4975); Orion Power New York LP, LLC (4976); Orion Power New York, L.P. (9521); RRI Energy Broadband, Inc. (5569); RRI Energy Channelview (Delaware) LLC (9717); RRI Energy Channelview (Texas) LLC (5622); RRI Energy Channelview LP (5623); RRI Energy Communications, Inc. (6444); RRI Energy Services Channelview LLC (5620); RRI Energy Services Desert Basin, LLC (5991); RRI Energy Services, LLC (3055); RRI Energy Solutions East, LLC (1978); RRI Energy Trading Exchange, Inc. (2320); and RRI Energy Ventures, Inc. (7091). The Debtors' service address is: 804 Carnegie Center, Princeton, New Jersey 08540.

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 5

I.     THE BANKRUPTCY COURT HAS CLEAR AUTHORITY TO ADJUDICATE THE CLAIMS OBJECTION. ............................................... 5

II.    THE NATURAL GAS PLAINTIFFS OFFER NOTHING DEMONSTRATING THAT THIS COURT LACKS AUTHORITY TO ADJUDICATE THE CLAIMS OBJECTION. ............................................. 9

     A.    The Purported Preclusive Effect Of This Court's Judgments Is Not A Basis For Declining To Resolve the Claims Objection. ................................... 9

          1.    This Court can limit the preclusive effect of its judgments. ..................... 9

          2.    It is unlikely the Transferor Courts would find that this Court's judgments preclude claims against non-Debtor defendants ..................... 11

          3.    The purported preclusive effect is not a constitutional barrier to adjudicating the Claims Objection. ............................................................ 13

          4.    Preclusion risk exists independently of the bankruptcy proceedings. ............................................................................................... 14

          5.    The Natural Gas Plaintiffs assumed the risk of preclusive effect. ............ 15

     B.    The Prior-Pending-Action Doctrine Is Inapplicable. ............................................ 15

     C.    The Claims Objection Is Consistent With The Lift-Stay Orders. ......................... 18

     D.    There Is No Exception or Carve-Out To The Bankruptcy Court's Power For Long-Lasting Cases Involving Non-Debtor Defendants. ..................................... 19

III.    THE COURT SHOULD DISREGARD THE NATURAL GAS PLAINTIFFS' OTHER ARGUMENTS AS IRRELEVANT TO THE QUESTION WHETHER THIS COURT CAN DECIDE THE CLAIMS OBJECTION. .............................................................................................. 20

     A.    The Debtors Do Not Seek Reconsideration Of The MDL Court's Personal Jurisdiction Rulings. ............................................................................ 22

     B.    The Statute Of Limitations Can Be Addressed Before The Ultimate Question Of Antitrust Liability. ........................................................................... 23

     C.    The MDL Court Has Not Ruled Whether The Statutes Of Limitations Bar The Natural Gas Plaintiffs' Claims ........................................................................ 25

     D.    The Availability Of The Full Consideration Remedy Should Be Decided Before The Parties Put On Evidence Of Damage Calculations. ........................... 25

CONCLUSION ............................................................................................................... 27

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Assoc. Wholesale Grocers, Inc. v. United Egg Producers*
   No. 10-cv-2171 (Kan. Dist. Ct., Wyandotte Cnty. Oct. 3, 2013)...............................................26

*Burgess-Lester v. Ford Motor Co.*
   No. 1:06CV43, 2007 WL 3088082 (N.D.W.V. Oct. 22, 2007) ...............................................24

*Defino v. Civic Ctr Corp.*
   718 S.W. 2d 505 (Mo. App. 1986)...............................................23

*Executive Benefits Ins. Agency v. Arkison,*
   134 S. Ct. 2165 (2014). ...............................................14

*Granfinanciera, S.A. v. Nordberg*
   492 U.S. 33 (1989) ...............................................2, 6

*Horizon Bank & Tr. Co. v. Flaherty*
   309 F. Supp. 2d 178 (D. Mass. 2004) ...............................................11

*Hynix Semiconductor Inc. v. Rambus Inc.*
   No. C-00-20905 RMW, 2009 WL 292205 (N.D. Cal. Feb. 3, 2009) ...............................................10

*In re ATP Oil & Gas Corp.*
   No. 12-36187, 2016 WL 1043680 (Bankr. S.D. Tex. Mar. 15, 2016) ...............................................17

*In re Bellingham Ins. Agency, Inc.*
   702 F.3d 553 (9th Cir. 2012)...............................................7

*In re Carroll*
   464 B.R. 293 (Bankr. N.D. Tex. 2011) ...............................................16

*In re Com21, Inc.*
   357 B.R. 802 (N.D. Cal. 2006)...............................................16, 17

*In re Doctors Hosp. 1997, L.P.*
   351 B.R. 813 (Bankr. S.D. Tex. 2006)...............................................8

*In re Edelman*
   Case No. 13-31182, 2014 WL 1796217 (Bankr. N.D. Tex. May 6, 2014)...............................................15

*In re Endeavour Highrise L.P.*
   425 B.R. 402 (Bankr. S.D. Tex. 2010)...............................................8

*In re Enron Corp.*
   319 B.R. 122 (Bankr. S.D. Tex. 2004)...............................................8

*In re Exide Tech.*
    544 F.3d 196 (3rd Cir. 2008) ...................................................................... 19

*In re Harrah's Entm't, Inc. Sec. Litig.*,
    Civ. A. No. 95–3925, 1996 WL 684463 (E.D. La. Nov. 26, 1996) ........................................... 13

*In re LJM2 Co-Inv., L.P.*
    327 B.R. 786 (Bankr. N.D. Tex. 2005) ................................................................. 17

*In re Moore*
    739 F.3d 724 (5th Cir. 2014) ................................................................... 16, 19

*In re Sentry Operating Co. of Texas, Inc.*,
    273 B.R. 515 (Bankr. S.D. Tex. 2002) ................................................................. 15

*In re Tarragon Corp.*
    No. 09-10555(DHS), 2009 WL 2922308 (Bankr. D.N.J. Aug. 13, 2009) ............................... 19

*In re Tran*
    369 B.R. 312 (S.D. Tex. 2007) ..................................................................... 16

*In re W. States Wholesale Nat. Gas. Antitrust Litig.*
    715 F.3d 716 (9th Cir. 2013) ................................................................... 22, 27

*In re Wilborn*
    No. 03-48263, 2008 WL 2078089 (Bankr. S.D. Tex. May 15, 2008) ....................................... 8

*In re Wood*
    825 F.2d 90 (5th Cir. 1987) ....................................................................... 7

*Katchen v. Landy*
    382 U.S. 323 (1966) ......................................................................... *passim*

*Koshatka v. Philadelphia Newspapers, Inc.*
    762 F.2d 329 (3d Cir. 1985) ...................................................................... 11

*Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement & Equip. Corp.*
    54 F.3d 406 (7th Cir. 1995) ...................................................................... 10

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*
    458 U.S. 50 (1982) ............................................................................. 6, 8

*Natural Gas Antitrust Litigation*,
    715 F.3d 716 (9th Cir. 2013) ..................................................................... 27

*Pacheco v. Rice*
    966 F.2d 904 (5th Cir. 1992) ..................................................................... 23

*Petro-Hunt, L.L.C. v. U.S.*
    365 F.3d 385 (5th Cir. 2004) ..................................................................... 11

*Seaboard Terminals Corp. v. Standard Oil Co. of New Jersey*
   30 F. Supp. 671 (S.D.N.Y. 1939) ................................................................ 24

*Stern v. Marshall*
   564 U.S. 462 (2011) ................................................................... *passim*

*Test Masters Educ. Serv., Inc. v. Singh*
   428 F.3d 559 (5th Cir. 2005) ................................................................ 11

*Young v. Mentor Worldwide LLC*
   Case No. 4:17-cv-00063 (SWW), 2018 WL 2054591 (E.D. Ark. May 1, 2018) ..................... 24

*Yung v. Raymark Indust. Inc.*
   789 F.2d 397 (6th Cir. 1986) ................................................................ 24

**Statutes**

11 U.S.C. § 502(a) ........................................................................ 5

11 U.S.C. § 502(b) ................................................................... *passim*

11 U.S.C. § 502(c) ....................................................................... 16

28 U.S.C. § 1334(b) .................................................................... 2, 5

28 U.S.C. § 157(b) ..................................................................... 5, 8

**Rules**

Fed. R. Bankr. P. 9014 ................................................................... 20

**Other Authorities**

18 Fed. Prac. & Proc. Juris. § 4424.1 (3d ed.) .......................................... 10

The above-captioned debtors and debtors-in-possession (the "Debtors")[1] hereby reply to the *Midwest Plaintiffs' Brief Regarding Jurisdiction, Authority, Prior Pending Case Doctrine, Due Process, Comity, Abstention or Collateral Impact of the Court's Decision in Connection with Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation) [Docket Nos. 1481, 1482]* [Docket No. 1622] (the "Midwest Plaintiffs' Opening Brief"), and *Farmland's Brief Regarding Jurisdiction, Authority, Prior Pending Case Doctrine, Due Process, Comity, Abstention or Collateral Impact of the Court's Decision in Connection with Debtors' Objection to Certain Proofs of Claim (Natural Gas Litigation) [Related to ECF Nos. 1481 & 1482]* [Docket No. 1624] ("FLI's Opening Brief,"[2] and together with the Midwest Plaintiffs' Brief, the "Natural Gas Plaintiffs' Opening Briefs"). In support of their reply, the Claims Objection, and the Court's authority to decide the Claims Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Natural Gas Plaintiffs' challenge to the Court's ability to resolve the Claims Objection must overcome the Bankruptcy Code's clear statutory mandate that Courts **shall** resolve Claims Objections.  It has failed to do so.  Indeed, the Natural Gas Plaintiffs' Opening Briefs confirm that this Court has the authority and jurisdiction to hear the Claims Objection and allow or disallow the Natural Gas Plaintiffs' Proofs of Claim.  None of their arguments compel this Court to (i) ignore that the Bankruptcy Code compels this Court to resolve the Claims Objection; (ii) disregard decades of Supreme Court precedent reaffirming this Court's ability to enter final

---

[1]     Capitalized terms used herein but not otherwise defined shall have their meaning set forth in the *Debtors' Opening Memorandum in Further Support of their Objection to Certain Proofs of Claim (Natural Gas Litigation)* [Docket No. 1623] (the "Debtors' Opening Brief").

[2]     FLI adopts and restates the arguments made by the Midwest Plaintiffs in the Midwest Plaintiffs' Opening Brief. FLI's Opening Brief ¶ 12 ("Farmland hereby adopts each of the arguments made in the Midwest Plaintiff Brief"). Accordingly, unless otherwise stated, arguments made in response to the Midwest Plaintiffs' Opening Brief apply equally to FLI's Opening Brief.

judgments on matters necessary to rule on the Proofs of Claim; or (iii) exercise discretion to avoid adjudicating a core claims allowance proceeding, one that bankruptcy courts around the country routinely handle.  Rather, for the reasons discussed below and in the Debtors' Opening Brief, this Court can and should adjudicate the Claims Objection.

2.     ***First***, conspicuously absent from the Natural Gas Plaintiffs' Opening Briefs is any mention of 11 U.S.C. § 502(b), which obligates this Court to determine the amount of any claim to which there is an objection, *see* 11 U.S.C. § 502(b) (requiring "if such objection to a claim is made, the court . . . ***shall determine*** the amount" thereof) (emphasis added), or 28 U.S.C. § 1334(b) (providing this Court with authority to adjudicate proceedings arising under title 11).  The Natural Gas Plaintiffs want this Court to ignore this congressional mandate, and leave their proofs of claim unresolved for potentially several years.  But protracted litigation and the tying up of estate assets is precisely what the bankruptcy process was designed to avoid, by using fast, efficient summary proceedings for claim allowance.  *Katchen*, *Marathon*, *Granfinanciera*, *Stern*, and lower courts applying those decisions, each reiterate that bankruptcy courts have authority to enter final judgments in core matters, including claims adjudication.  And Bankruptcy courts regularly issue final judgments allowing or disallowing claims predicated on state law, like the Natural Gas Plaintiffs' state antitrust claims.

3.     ***Second***, any argument that this Court should stay or deny the Claims Objection because its judgments may have preclusive effect on the Natural Gas Plaintiffs' claims against non-Debtors pending outside this Court is meritless.  This Court can limit the preclusive effect of its judgments by carefully crafting its orders, as it has already stated it would do.  Further, as to several issues raised by the Claims Objection, it is unlikely the MDL Court or Transferor Courts would find that this Court's judgments preclude claims against non-Debtor defendants because

those issues do not concern non-Debtors.  And as to other issues, even if there is a risk of preclusive effect, the Natural Gas Plaintiffs assumed that risk by filing their Proofs of Claim, and will have a full and fair opportunity to litigate those issues in this Court.  The Natural Gas Plaintiffs cannot seek the benefits of the Bankruptcy Code by pursuing potentially massive claims against the Debtors while simultaneously avoiding the summary adjudication of those claims that are necessary to an efficient administration of the Debtors' estates.   Having to litigate issues raised by the Claims Objection in this Court, as opposed to Transferor Courts, does not impinge on the Natural Gas Plaintiffs' right to due process, and does not require this Court to stay or deny the Claims Objection pending resolution of the cases pending in the MDL Litigation—a process that may take years.

4.     *Third*, the prior-pending-action doctrine does not apply here.  Bankruptcy courts do not apply that doctrine to stay or deny claims objections, and doing so here would not only conflict with bankruptcy's chief purpose of securing prompt resolution of claims against the estate, it would abrogate Congress's statutory mandate that this Court "shall" determine the amount of the Natural Gas Plaintiffs' claims.  *See* 11 U.S.C. § 502(b).

5.     *Fourth*, the Natural Gas Plaintiffs' request to stay or deny the Claims Objection relies on a tortured and implausible interpretation of the Lift-Stay Orders.  The Lift-Stay Orders do not render the MDL Court the exclusive forum for adjudicating the Natural Gas Plaintiffs' claims.  Rather, the Debtors reserved all rights in the Lift-Stay Orders "under the Bankruptcy Code," *see* Midwest Plaintiffs' Lift-Stay Order ¶ 2, including the right to object to the Proofs of Claim, which the Natural Gas Plaintiffs filed after the Lift-Stay Orders were entered, so that the Proofs of Claim are not deemed allowed in full.  The Lift-Stay Orders did not carve the Natural

Gas Plaintiffs out of the bankruptcy, *see* Oct. 19, 2017 Hr'g Tr. 15:17-16:15[3], and nothing in those orders deprives this Court of the jurisdiction and authority to decide the Claims Objection provided to it by Congress and reaffirmed by the Supreme Court.

6. ***Fifth***, the Bankruptcy Code does not exempt antitrust cases from the claims allowance process. To the contrary, bankruptcy courts have decided claims objections involving antitrust issues, even involving multiple defendants not before the court. This Court can and should do the same.

7. ***Finally***, the Natural Gas Plaintiffs raise several arguments relating to the Debtors' proposed protocols and division of hearings to resolve the Claims Objection, yet none of them have any bearing on the only question before this Court at this time—whether it can and should hear the Claims Objection. The Court has full discretion to structure and manage the claims adjudication process and can address how best to proceed at a later date, in the event the Court decides to adjudicate the Claims Objection. But even if this Court does consider the Natural Gas Plaintiffs' improper and irrelevant arguments at this time, none of their arguments have merit.

8. At bottom, the Natural Gas Plaintiffs are asking the Court to abstain from adjudicating a core claims allowance issue, ignoring that the Court's mandate is the swift adjudication of the estate, *Katchen v. Landy*, 382 U.S. 323, 328 (1966) (one of the "chief purposes" of the bankruptcy process is to "secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period"). As this Court has already recognized, "at some point the bankruptcy has to have an effect" on the Natural Gas Plaintiffs' Claims; they do not "just simply stay out there forever." November 1, 2017 Hr'g Tr. at 32:23-33:1; Littlefield Decl. ¶ 3,

---

[3] *See* ¶ 2, Ex. 1 to the Declaration of Ashley Littlefield In Support of Debtors' Reply Memorandum in Further Support of Their Objection to Certain Proofs of Claim (Natural Gas Litigation) ("Littlefield Decl."), attached hereto as Exhibit A.

Ex. 2. For all of the foregoing reasons, the Court should proceed to adjudicate the Claims Objection and allow—or disallow—the Natural Gas Plaintiffs' claims.

## ARGUMENT

## I.   THE BANKRUPTCY COURT HAS CLEAR AUTHORITY TO ADJUDICATE THE CLAIMS OBJECTION.

9.      The Court has a mandate under 28 U.S.C. § 1334(b) to adjudicate proceedings such as this one, "arising under title 11 . . . ."  The Bankruptcy Code and Supreme Court precedent explicitly authorize Bankruptcy courts to adjudicate claim objections through summary proceedings.  28 U.S.C. § 157(b) (objections to proofs of claim are "core proceedings"); *Stern v. Marshall*, 564 U.S. 462, 471 (2011) ("bankruptcy courts may hear and enter final judgments in 'core proceedings' in a bankruptcy case"); *Katchen v. Landy*, 382 U.S. 323, 329-30 (1966) (noting that bankruptcy courts are empowered to allow or disallow claims in summary proceedings, "and not by the slower and more expensive processes of a plenary suit").

10.     In cases such as these, where the debtors dispute the validity and amounts of proofs of claim, the Bankruptcy Code *requires* such a procedure.  Specifically, if a putative creditor files a claim, the debtor must object or the claim will be deemed allowed in full.  11 U.S.C. § 502(a) ("A claim . . . is deemed allowed, unless a party in interest . . . objects").  If the debtor objects, the bankruptcy court must determine whether the claim will be allowed or disallowed.  *See* 11 U.S.C. § 502(b) ("[I]f such objection to a claim is made, the court, after notice and a hearing, *shall* determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount . . . .") (emphasis added).

11.     The Supreme Court's decision in *Stern* is the latest in a line of cases beginning with *Katchen* affirming that a bankruptcy court can hear and decide the allowance of claims against a debtor's estate, nearly all of which are governed by state law.  *Katchen*, 382 U.S. at 325.  Each of

*Marathon*, *Granfinanciera*, and *Stern* reaffirm this central holding while drawing a distinction between (i) state law claims ***against*** the debtor seeking to obtain a share of ***estate assets***, which can and should be adjudicated by the bankruptcy court in summary proceedings; and (ii) state law claims ***by*** the debtor to ***bring assets into*** the estate, which cannot be finally adjudicated by the bankruptcy court. *Stern*, 564 U.S. at 496 (in *Katchen*, the "plenary proceeding [to recover a preference that] the creditor sought could be brought into the bankruptcy court because 'the same issue [arose] as part of the process of allowance and disallowance of claims.'"); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59, n.14 (1989) ("by submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims"); *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) ("the restructuring of debtor-creditor relations . . . may well be a 'public right'").

12.     The Natural Gas Plaintiffs' argument that the Court should ***extend*** the "*Stern* rationale," Midwest Plaintiffs' Opening Brief at 13, and interpret it to prohibit the Court from deciding the Claims Objection ignores *Stern's* actual holding and has no support in *Stern* or in any case interpreting it. In *Stern*, a creditor filed a proof of claim predicated on a pending defamation action, and the debtor filed a counterclaim for tortious interference. *Stern*, 564 U.S. at 470. The bankruptcy court held a bench trial on the debtor's claim for tortious interference and then awarded her $425 million in damages. *Id.* at 470-71. There was no question in *Stern* of the bankruptcy court's authority to adjudicate the ***creditors' state law claims*** against the debtor. *Id.* at 496. Rather the Supreme Court held that the bankruptcy court did not have constitutional authority to adjudicate the ***debtors' counterclaim*** against a third party defendant because it did not stem "from the bankruptcy itself," nor would it "necessarily be resolved in the claims allowance process." *Id.* at 499. *Stern* confirms that Courts are empowered to adjudicate claims brought into the bankruptcy

by, *e.g.*, the filing of a proof of claim and objection thereto—exactly the situation before this Court. *Stern*, 564 U.S. at 496 (preference issue in *Katchen* was "part of the process of allowing or disallowing claims, and accordingly there was no basis for the creditor to insist that the issue be resolved in an Article III court.").

13.     Thus, had the Debtors asserted a state-law counterclaim against the Natural Gas Plaintiffs in this Court, *Stern* would provide a basis for this Court to decline to adjudicate that claim.  But that is not what the Debtors ask this Court to adjudicate; the Natural Gas Plaintiffs filed claims ***against the Debtors for estate assets***, completely different from "the state-law defamation counterclaim at issue in *Stern*."  It is their claim against the estate assets that the Debtors seek to disallow.  Midwest Plaintiffs' Opening Brief ¶ 31.  The Natural Gas Plaintiffs fail in their attempt to paint themselves as counterclaim defendants like the creditors in *Stern*.  Their Proofs of Claim, and the adjudication thereof—the purpose of this proceeding—stem from the bankruptcy itself and may be fully and finally adjudicated by this Court.  *See In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (noting that a proof of claim adjudication is a proceeding that "could arise only in the context of a bankruptcy").  If the Natural Gas Plaintiffs are arguing that the *Stern* "rationale" extends not just to matters actually decided by bankruptcy courts, but also to matters that ***might be affected*** by bankruptcy courts' rulings on claims objections, which are well within their authority, that extension of *Stern* has no support either in the decision itself or in the case law interpreting it.

14.     Plaintiffs also cite *In re Bellingham Ins. Agency, Inc.,* 702 F.3d 553 (9th Cir. 2012), for the premise that if a legal cause of action does not involve a public right, Congress may not deprive parties litigating over such a right of a jury trial before an Article III tribunal.  Midwest Plaintiffs' Opening Brief ¶ 33 (citing *Bellingham*, 702 F.3d at 563).  But claims allowance is a core matter arising under section 502 of the Bankruptcy Code that bankruptcy courts "shall"

decide, 28 U.S.C. § 157(b); 11 U.S.C. § 502(b), and it is well established that creditors, such as the Natural Gas Plaintiffs, who file proofs of claim submit to the jurisdiction of the bankruptcy court and waive their right to a jury trial on issues necessarily resolved in the course of adjudicating their claims. *In re Enron Corp.*, 319 B.R. 122, 125 (Bankr. S.D. Tex. 2004) ("the determination of claims asserted against a bankruptcy estate involves the equitable process. When a creditor elects to participate in that equitable process by filing a proof of claim, the creditor waives any right to a jury trial.") (internal citations omitted); *In re Endeavour Highrise L.P.*, 425 B.R. 402, 408 (Bankr. S.D. Tex. 2010) ("a creditor or party-in-interest who voluntarily files a claim against the bankruptcy estate thereby loses the Seventh Amendment right to a jury trial if the trustee subsequently objects to the claim or seeks some other affirmative relief relating to the claim"); *In re Doctors Hosp. 1997, L.P.*, 351 B.R. 813, 873 (Bankr. S.D. Tex. 2006) (creditors "have also subjected themselves to the jurisdiction of this Bankruptcy Court by filing a proof of claim in the Debtor's Main Case. Once a claimant files or expresses an intent to file a proof of claim against the estate, the claimant is no longer entitled to a jury trial.") (internal citations omitted); *In re Wilborn*, No. 03-48263, 2008 WL 2078089, at *3 (Bankr. S.D. Tex. May 15, 2008) ("[a] debtor or creditor with an otherwise valid right to a jury may lose such right through conversion of his legal claim into an equitable claim if the proceeding invokes the . . . claims allowance or disallowance process") (internal quotation marks omitted); *see also Northern Pipeline Const. Co.*, 458 U.S. at 71 ("the restructuring of debtor-creditor relations . . . may well be a 'public right'").[4]

---

[4]   The Natural Gas Plaintiffs' argument that they "preserved their assertion to a jury trial" in the Proofs of Claim, Midwest Plaintiffs' Opening Brief ¶ 33 n. 10, is therefore baseless. The Natural Gas Plaintiffs waived their right to a jury trial by filing the Proofs of Claim.

15.     Thus, the Natural Gas Plaintiffs' arguments do not change the framework established by Congress in the Bankruptcy Code and upheld by the Supreme Court empowering the Court to adjudicate the Claims Objection.

## II.    THE NATURAL GAS PLAINTIFFS OFFER NOTHING DEMONSTRATING THAT THIS COURT LACKS AUTHORITY TO ADJUDICATE THE CLAIMS OBJECTION.

### A.    The Purported Preclusive Effect Of This Court's Judgments Is Not A Basis For Declining To Resolve the Claims Objection.

16.     The Natural Gas Plaintiffs argue that this Court should not adjudicate the Claims Objections because of the purported risk of preclusive effect on their claims against other defendants in the MDL Litigation.  But the Natural Gas Plaintiffs overstate that risk, both because this Court is willing and able to limit the preclusive effect of its judgments, and because it is unlikely that the Transferor Courts who will ultimately try the Natural Gas Plaintiffs' cases against other defendants will find preclusion.  Moreover, even if there is a preclusion risk, that is not a reason not to summarily adjudicate the Claims Objection.  The risk of preclusion does not, as the Natural Gas Plaintiffs contend, create a constitutional problem, that risk inherently exists as a result of multiple plaintiffs having similar cases against different defendants and will exist regardless of these proceedings, and the Natural Gas Plaintiffs assumed that risk by filing and continuing to pursue their Proofs of Claim in this Court.

### 1.    This Court can limit the preclusive effect of its judgments.

17.     Contrary to the Natural Gas Plaintiffs' assertions, it is not "effectively impossible" for the Court to limit the preclusive scope of its ruling on the claims objection.  Midwest Plaintiffs' Opening Brief at ¶ 11.  In fact, this Court has repeatedly expressed willingness to shape its rulings in a manner that limits any preclusive effect, *see e.g.,* Apr. 25, 2018 Hr'g Tr. at 53:9-22, and the Court can accomplish that by, for example, limiting its ruling to the role, if any, of the Debtors in

alleged conspiracy or by delineating in its ruling the scope of the matters "actually litigated" in the course of adjudicating the Claims Objection. Littlefield Decl. ¶ 4, Ex. 3.  The Debtors are willing to accept the Court's recommendation to "negotiate a resolution that says whatever happens in the Bankruptcy Court will not be used for any purpose in any other Court," March 30, 2018 Hr'g Tr. at 20:13-15, and to consent to an order limiting the preclusive effect of these proceedings.  *See* Littlefield Decl. ¶ 5, Ex. 4.  An order to that effect should allay any concerns the Natural Gas Plaintiffs have about the impact of this case on their litigation with other defense groups in the MDL Litigation.  *See* 18 Fed. Prac. & Proc. Juris. § 4424.1 (3d ed.) ("A court that foresees future litigation may seek to limit directly the possible preclusion consequences of its own judgment. It has been seen that a court can declare that its judgment should not preclude a second action on part of the same claim.  The same rule should hold for issue preclusion."); *see also* Mar. 30, 2018 Hr'g Tr. at 30:17-20 ("I have written into numerous orders, gotten Judges all over the country to sign orders that had the limitation in it that I mentioned to Mr. Rubio and I have never seen anybody successfully undo that.").   Littlefield Decl. ¶ 5, Ex. 4.

18.     The cases the Natural Gas Plaintiffs cite in support of their argument, Midwest Plaintiffs' Opening Brief ¶ 11, stand only for the unremarkable premise that the Court cannot **order** the MDL Court or Transferor Courts to accord or not to accord preclusive effect to the Court's rulings.  For example, the Seventh Circuit's observation in *Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement & Equip. Corp.*, 54 F.3d 406 (7th Cir. 1995), that "the court rendering the first judgment does not get to determine that judgment's effect; the second court is entitled to make its own decision," *id.* at 407, merely affirms that one court's determination of the preclusive effect of its judgment is not *binding* on another court.  *Hynix Semiconductor Inc. v. Rambus Inc.*, No. C-00-20905 RMW, 2009 WL 292205, at *1 (N.D. Cal. Feb. 3, 2009) ("In the

end, decision [as to preclusion] will necessarily rest on the trial courts' sense of justice and equity."). Nothing in *Midway* suggests that the MDL or Transferor Courts will ignore or disregard an Order from this Court concerning the preclusive effect of these proceedings, and, consistent with the Court's experience, courts regularly include in decisions language to that effect. *See, e.g.*, *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 337 (3d Cir. 1985) ("because adequate alternate grounds exist for the district court's holding, the common law contract ruling was not essential to the outcome. Therefore, we specifically hold that this portion of the district court's opinion has no effect on appellant's claim in state court"); *Horizon Bank & Tr. Co. v. Flaherty*, 309 F. Supp. 2d 178, 194 (D. Mass. 2004) ("If the Court were to decide the entire case here, there would presumably be no preclusion as between the Commonwealth and the nongovernmental parties. Any other result would be inconsistent with the Eleventh Amendment.").

> ### 2. It is unlikely the Transferor Courts would find that this Court's judgments preclude claims against non-Debtor defendants.

19.     The Natural Gas Plaintiffs contend the risk of preclusive effect is heightened here because the Debtors seek "definitive, dispositive rulings on the merits of Claimants' antitrust claims." Midwest Plaintiffs' Opening Brief ¶ 14. They are mistaken. In the Fifth Circuit, claim preclusion requires that: (1) the parties are identical or in privity, (2) the judgment in the prior action was rendered by a court of competent jurisdiction, (3) the prior action was concluded by a final judgment on the merits, and (4) the same claim or cause of action was involved in both actions. *E.g., Petro-Hunt, L.L.C. v. U.S.*, 365 F.3d 385, 395 (5th Cir. 2004). In determining whether the same claim is involved in both actions there is a simple test: "[i]f a party can only win the suit by convincing the court that the prior judgment was in error, the second suit is barred." *Test Masters Educ. Serv., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). This is not the case here. A ruling that the Natural Gas Plaintiffs' claims are not allowable because one or both of the

***Debtors*** are not liable to them under the respective state antitrust laws is not "the same" issue as whether unrelated, ***non-Debtor*** defendants participated in a price-fixing conspiracy.  For example, the Court could easily find that the Debtors did not participate in a conspiracy without finding that no conspiracy existed among other non-Debtor defendants.  Thus, the Natural Gas Plaintiffs' hyperbolic assertion that adjudicating the Claims Objection would affect claims "against more than ten co-conspirators in thirteen-year-old multi-state lawsuits," Midwest Plaintiffs' Opening Brief ¶ 10, is simply not true, and this Court can decide the Debtors' liability without impinging the Natural Gas Plaintiffs' right to try their ultimate claims against non-Debtor defendants in trials in the Transferor Courts.

20.     Indeed, even apart from the ultimate antitrust liability question upon which the Natural Gas Plaintiffs focus, other issues raised in the Claims Objection are squarely focused on activities and issues specific to GenOn and RRI.  For instance, the Debtors request that this Court decide whether certain Natural Gas Plaintiffs have claims pending ***against GenOn*** in light of MDL Court rulings on ***GenOn's*** personal jurisdiction in the MDL Litigation.  *See* Scheduling Motion ¶ 13(i).  This argument is not dependent on the presence of other defendants and is unlikely to have any preclusive effect on them.  Similarly, the ultimate question of the amount of damages each remaining Natural Gas Plaintiff may recover from any remaining Debtor is unlikely to have any preclusive effect on non-debtor defendants.

21.     And as to the remaining issues the Debtors propose be heard in connection with the Claims Objection, such as whether a retroactive repeal of Kansas' full consideration statute bars FLI and the Kansas Plaintiffs from recovering full consideration damages, and whether the Natural Gas Plaintiffs had sufficient notice of their claims so as to trigger the statute of limitations, the

Natural Gas Plaintiffs will have just as full and fair an opportunity to litigate those issues in this Court as they would have (or already have had)[5] in the Transferor Courts.

### 3. The purported preclusive effect is not a constitutional barrier to adjudicating the Claims Objection.

22. The Natural Gas Plaintiffs contend that the purported potential preclusive effect creates constitutional concerns, remarkably citing *Stern* in support. They argue that a ruling on the Claims Objection is equivalent to ruling directly on the claims against non-Debtors in the MDL Litigation. It follows, the Natural Gas Plaintiffs argue, that a bankruptcy court ruling that has any indirect impact on their claims against the non-debtor defendants is the equivalent of the bankruptcy court's bench trial and damages award in *Stern*. There is no support for that position in *Stern* or elsewhere;[6] *Stern* confirms which proceedings are core and can be adjudicated in this Court (objections to proofs of claim, like the Claims Objection), and what proceedings are non-core and cannot be adjudicated in this Court (state-law counterclaims by debtors against creditors). *Stern*, 564 U.S. at 496, 499. And it clearly held ***bankruptcy courts have authority to rule on claims that "would necessarily be resolved in the claims allowance process."*** *Id.* *Stern* therefore reaffirms the basic principle that bankruptcy courts may adjudicate claim objections whether or

---

[5]     The MDL Court already granted a motion for summary judgment dismissing claims for full consideration under Kansas law on this very basis as to other defendants. *See* MDL Docket No. 2957 at 7-10; Littlefield Decl. ¶ 6, Ex. 5; *see also* Journal Entry Memorializing Rulings on Defendants' Motion for Partial Summary Judgment at 4, *Assoc. Wholesale Grocers, Inc. v. United Egg Producers*, No. 10-cv-2171 (Kan. Dist. Ct., Wyandotte Cnty. Oct. 3, 2013) (holding repeal of the full consideration statute operated retroactively, barring the plaintiffs' claims for full consideration damages even though they were made before the repeal); Littlefield Decl. ¶ 7, Ex. 6. Whether this Court finds that ruling precludes attempts to recover full consideration damages under Kansas law in this Court, or whether another Court finds that a ruling by this Court on that issue is preclusive on claims against non-Debtor defendants, that is not a reason to decline adjudication of the Claims Objection.

[6]     Plaintiffs cite *In re Harrah's Entm't, Inc. Sec. Litig.*, Civ. A. No. 95–3925, 1996 WL 684463 (E.D. La. Nov. 26, 1996), in which the court held that filing a proof of claim in Harrah's bankruptcy did not waive the creditor's right to a jury trial against non-debtors. *Id.*, at *3. But in *Harrah*, the court simply refused to refer the action against non-debtors to the bankruptcy court. It did not suggest that the bankruptcy court could not adjudicate claims ***against the debtors*** because doing so might have preclusive effect in the case against the non-debtors. *Id.*

not they are predicated on an underlying proceeding or turn on state law.[7]  That this would be a constitutional problem is an idea concocted entirely by the Natural Gas Plaintiffs—not by Congress, not by the United States Supreme Court, and not by any other Court that has adjudicated claims objections.[8]

### 4.   Preclusion risk exists independently of the bankruptcy proceedings.

23.   The Natural Gas Plaintiffs' arguments regarding the preclusive effect of this Court's judgments ignore the fact that they will face the same risks of preclusion, or persuasive authority, within the context of the MDL Litigation anyway.  The MDL court will not try any of these cases; at the conclusion of the coordinated pretrial proceedings, the Natural Gas Plaintiffs' claims against non-Debtor defendants will be returned to the Transferor Courts in Wisconsin, Missouri and Kansas separate trials.   One of these cases will necessarily be the first to be tried, and the results of any decisions from that trial may have the same preclusive effect on the other trials that the Natural Gas Plaintiffs contend could arise from this dispute.  So even if this Court accepts the Natural Gas Plaintiffs' argument that its judgments may diminish their ability to try claims at a jury trial in Transferor Courts, decisions in Transferor Courts are just as likely to diminish the Natural Gas Plaintiffs' ability to try their claims before juries in other Transferor Courts.  Preclusion, therefore, should not bar resolution of the Claims Objection in this Court.

---

[7]   Similarly, Plaintiffs are wrong that "the alternative is for this Court to issue proposed findings of fact and conclusions of law subject to *de novo* review by the District Court," Pls.' Br. at 16 n. 12, because an objection to a proof of claim is not "'[a] *Stern* claim'—a claim designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter." *Executive Benefits Ins. Agency v. Arkison,* 134 S. Ct. 2165, 2170 (2014).

[8]   In any event, this Court's final decisions are reviewable by the District Court and Court of Appeals, so the Natural Gas Plaintiffs' distinction between decisions by Article I and III courts is meaningless.

5.      **The Natural Gas Plaintiffs assumed the risk of preclusive effect.**

24.      Finally, even if adjudicating the Claims Objection would have a preclusive effect on other claims pending in the MDL Litigation, the Natural Gas Plaintiffs assumed that risk when they invoked this Court's jurisdiction, filed the Proofs of Claim, and demanded their allowance. That risk was not created by the Debtors, but by the Bankruptcy Code, and the Natural Gas Plaintiffs have doubled-down in the face of that risk by continuing to pursue their claims in this Court.  If they wanted to avoid that risk, they could seek a consensual withdrawal of their Proof of Claims.

25.      As noted above, the Debtors are willing to work with the Natural Gas Plaintiffs to minimize the preclusive effect of the Court's ruling on the Claims Objection through a court order, but any residual risk is of the Natural Gas Plaintiffs' own making and is not grounds to abstain from adjudicating the Claims Objection.  *In re Sentry Operating Co. of Texas, Inc.*, 273 B.R. 515, 520 (Bankr. S.D. Tex. 2002) ("the [Supreme] Court addressed whether the bankruptcy court should abstain or should abate proceedings on objections to claims to avoid *res judicata* or collateral estoppel consequences and to allow a plenary action to proceed on the legal claim for affirmative relief. The Court held that the bankruptcy court had the authority to do so, but generally should not.").

B.      **The Prior-Pending-Action Doctrine Is Inapplicable.**

26.      Bankruptcy courts routinely reject the existence of a prior pending action as a sufficient basis to stay or dismiss claim objections.  Claims in bankruptcy are often predicated on claims pending in an underlying lawsuit, and bankruptcy courts allow, disallow, and estimate those claims as they would any others.  *See, e.g.*, *In re Edelman*, Case No. 13-31182, 2014 WL 1796217, at *2 (Bankr. N.D. Tex. May 6, 2014) (resolving plaintiffs' proofs of claim and the state-law claims underlying the proofs of claim because resolving the state-law claims was "necessary to adjudicate

both th[e] adversary and the allowability of the claims asserted in the Proofs of Claim"); *In re Carroll*, 464 B.R. 293, 313 (Bankr. N.D. Tex. 2011) (concluding that the court had the power to enter judgment on plaintiff's state law claims); *In re Tran*, 369 B.R. 312, 322 (S.D. Tex. 2007) (affirming the bankruptcy court's decision disallowing plaintiff's proofs of claim and finding that the underlying state law claims were invalid); *see also, In re Moore*, 739 F.3d 724, 728 (5th Cir. 2014) (holding that the bankruptcy court had authority to enter a final judgment on the proof of claim and the underlying state-law claims because the creditor "filed a proof of claim [in the bankruptcy proceeding] for debts owed by the debtor, and resolving the state-law claims is necessary to adjudicating its proof of claim.").

27.     The Natural Gas Plaintiffs' position—that bankruptcy courts should decline to adjudicate claims predicated on an underlying litigation until that litigation is resolved—is inimical to bankruptcy's "chief purpose," which is to "secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period," *Katchen*, 382 U.S. at 328 (citation omitted), and Congress's statutory mandate that this Court ***"shall determine"*** the amount of claims, *see* 11 U.S.C. §§ 502(b) and (c) (emphasis added), and would undermine bankruptcy courts' ability to supervise timely and efficient reorganizations.

28.     None of the three cases the Natural Gas Plaintiffs cite in support of their assertion that bankruptcy courts "use the [prior-pending-action] doctrine to defer to existing district court proceedings," Midwest Plaintiffs' Opening Brief ¶ 19, has anything to do with adjudicating a claims objection.  For instance, in *In re Com21, Inc.*, 357 B.R. 802 (N.D. Cal. 2006), the bankruptcy court stayed an adversary proceeding brought against the debtor and other, unrelated entities in favor of a first-filed patent litigation to which the debtor was not a party.  *Id.* at 806. The bankruptcy court applied the prior-pending-action doctrine after finding it would need to act

16

to resolve the dispute or to address its consequences in only one potential scenario, and that even in that scenario, the other court's decision "will streamline the issues that would need to be decided here." *Id.* at 808.

29.     Similarly, in *In re ATP Oil & Gas Corp.*, No. 12-36187, 2016 WL 1043680 (Bankr. S.D. Tex. Mar. 15, 2016), a creditor sought to impose and enforce a statutory privilege and lien on a floating hydrocarbon production facility to secure debt owed by the debtor. *Id.*, at *2. The creditor filed a case in Texas state court and an adversary proceeding in the Bankruptcy Court for the Southern District of Texas seeking the same relief. *Id.* The Texas state court case was removed to the district court, and the district court granted the debtors' motion to dismiss. *Id.* The bankruptcy court then held it would "decline[] the opportunity to turn Article III of the Constitution on its head by revisiting the decision of its own District Court," *id.*, at *4, and dismissed the adversary proceeding.

30.     And in *In re LJM2 Co-Inv., L.P.*, 327 B.R. 786 (Bankr. N.D. Tex. 2005), a trustee filed two adversary proceedings in the bankruptcy court. The first sought a money judgment, and the second sought recovery of a subset of the money at issue in the first case on the theory that it had been fraudulently transferred. *Id.* at 790. The first adversary proceeding was transferred to an MDL Court, and the court then applied the prior-pending-action doctrine and transferred the second proceeding as well. *Id.*

31.     This Court should not be the first bankruptcy court in the Fifth Circuit to apply the discretionary prior-pending-action doctrine to defer adjudicating a claims objection predicated on pending litigation, especially where, as here, the Natural Gas Plaintiffs filed both the complaints pending in the MDL Litigation ***and*** the Proofs of Claim that the Claims Objection seeks to disallow.

**C.      The Claims Objection Is Consistent With The Lift-Stay Orders.**

32.      The Natural Gas Plaintiffs' argument that the Lift-Stay Orders render the MDL Court the exclusive forum for adjudicating their claims, *see* Midwest Plaintiffs' Opening Brief ¶ 26; FLI's Opening Brief ¶ 15, is untethered from the actual Lift-Stay Orders.  The Natural Gas Plaintiffs' interpretation of the Lift-Stay Orders requires one to insert the word "exclusive" before the provision allowing the MDL Litigation to continue.  But that word appears nowhere in the Lift-Stay Orders.  Instead, the Lift-Stay Orders expressly reserved the Debtors' right to "dispute prepetition claims on any grounds" and did not "affect . . . the Debtors'. . . rights or defenses . . . *under the Bankruptcy Code*."  Midwest Plaintiffs Lift-Stay Order ¶ 2 (emphasis added); FLI Lift-Stay Order ¶¶ 5, 6.  *See also* Oct. 19, 2017 Hr'g Tr. at 37:21-25 (the Debtors "didn't waive any of [their] rights in this bankruptcy proceeding.") Littlefield Decl. ¶ 2, Ex. 1.  Notably none of the Natural Gas Plaintiffs dispute that the Debtors have the right to object to claims under Section 502 of the Bankruptcy Code.

33.      This Court has already recognized that carving the Natural Gas Plaintiffs out of the bankruptcy "was never contemplated by the [D]ebtors," Oct. 19, 2017 Hr'g Tr. at 15:17-16:15, that this Court would not stay resolution of claims indefinitely pending appeals from proceedings in the MDL Court, trials on the merits in the Transferor Courts, and "who knows what else," Oct. 19, 2017 Hr'g Tr. at 15:10-20; 15:10-16, and that, if necessary, this Court would conduct estimation procedures to resolve feasibility objections, notwithstanding entry of the Lift-Stay Orders.  Oct. 19, 2017 Hr'g Tr. at 25:24-26:13; Littlefield Decl. ¶ 2, Ex 1.

34.      The Natural Gas Plaintiffs filed their Proofs of Claim *after* entry of the Lift-Stay Orders; the Debtors had a statutory right, and duty, to object to the Proofs of Claim or risk their allowance; the Debtors exercised that right consistent with the Lift-Stay Orders' plain language; and now the Debtors ask this Court, consistent with the Constitution and the Bankruptcy Code, to

decide the Claims Objection.  *See* 11 U.S.C. § 502(b); *Stern*, 564 U.S. at 487, 496.  Nothing the Natural Gas Plaintiffs offer warrants otherwise.

> ### D.    There Is No Exception or Carve-Out To The Bankruptcy Court's Power For Long-Lasting Cases Involving Non-Debtor Defendants.

35.    Plaintiffs' great emphasis on the duration of the underlying litigation and the involvement of multiple parties has no statutory grounding and ignores common practice in bankruptcy courts.  *See* Midwest Plaintiffs' Opening Brief ¶ 34.  In the course of resolving proofs of claims bankruptcy courts must regularly resolve the underlying claims of proofs of claims, regardless of the nature of the underlying litigation.  *See, e.g., In re Moore*, 739 F.3d at 728 (holding that the bankruptcy court had constitutional authority to enter a final judgment on the proof of claim and the underlying state-law claims because the creditor "filed a proof of claim [in the bankruptcy proceeding] for debts owed by the debtor, and resolving the state-law claims is necessary to adjudicating its proof of claim.").

36.    Plaintiffs point to no statutory authority to suggest bankruptcy courts lose jurisdiction to resolve objections to proofs of claim arising out of complex, multi-defendant litigations.  Indeed, it is clear that bankruptcy courts can and regularly do resolve such claims. *See, e.g., In re Exide Tech.*, 544 F.3d 196, 214 (3rd Cir. 2008) (in a case involving state law claims against multiple defendants, ***including debtor and non-debtors***, the court stated that, when determining the scope of the bankruptcy court's authority, "[d]ebtors' proposition that the filing of a proof of claim in bankruptcy transforms a pre-petition state law claim which was filed in state court before the bankruptcy into a core proceeding is sound") (internal citations omitted); *In re Tarragon Corp.*, No. 09-10555(DHS), 2009 WL 2922308, at *8 (Bankr. D.N.J. Aug. 13, 2009) (finding jurisdiction and denying plaintiffs' motion to abstain based on plaintiffs' filing of proofs of claim in a case involving underlying state court litigation with multiple defendants including

the debtor). Moreover, the Natural Gas Plaintiffs do not ask the Court to abstain or defer ruling

on the Claims Objection in favor of the MDL Court. Issues not resolved by this Court will instead

be resolved in the Transferor Courts, which have no more background or expertise in the subject

matter of the MDL Litigation than this Court does.

37. Nor does the complexity or duration of an underlying litigation alter the Supreme

Court's mandate that bankruptcy courts are to decide claims objections in summary proceedings,

*Katchen*, 382 U.S. at 329 (bankruptcy courts are empowered to allow or disallow claims in

summary proceedings, "and not by the slower and more expensive process of a plenary suit"). The

Natural Gas Plaintiffs are therefore wrong that their inability to present a fully plenary trial by

using the subpoena to compel the attendance of third parties is grounds not to adjudicate the Claims

Objection; bankruptcy courts' allowance or disallowance of claims, including claims predicated

on underlying litigation, occurs after summary proceedings, not through a full-fledged adversary

proceeding. FED. R. BANKR. P. 9014.

## III.   THE COURT SHOULD DISREGARD THE NATURAL GAS PLAINTIFFS' OTHER ARGUMENTS AS IRRELEVANT TO THE QUESTION WHETHER THIS COURT CAN DECIDE THE CLAIMS OBJECTION.

38. The Natural Gas Plaintiffs attempt to shoehorn their substantive responses to

Debtors' Claims Objections—and the related proposed procedures—into this discussion. But

these arguments have no bearing on the only question this Court agreed to decide at this time—

whether it can hear the Claims Objection. *See* Apr. 25, 2018 Hr'g Tr. at 68:16-23 (the "issue is

whether the Bankruptcy Court may or should adjudicate the claims objection, taking into account

any issues of jurisdiction, authority, prior pending case doctrine, due process, comity, abstention

or potential collateral impact of this Court's decision."). Littlefield Decl. ¶ 4, Ex. 3.

39. For example, the Natural Gas Plaintiffs argue: (i) the MDL Court has already

decided that it has personal jurisdiction over the Wisconsin Plaintiffs, *see* Midwest Plaintiffs' Brief

20

¶¶ 37-41; (ii) the statutes of limitations cannot be litigated separately from the merits of Natural Gas Plaintiffs' antitrust claims, *see id.* ¶¶ 42-48; (iii) the Debtors' statutes of limitations arguments have already been rejected by the MDL Court, *see id.* ¶¶ 49-54; (iv) full consideration damages cannot be tried separately from antitrust liability, *see id.* ¶¶ 63-64; and (v) the MDL Court has already decided the availability of full consideration damages for Wisconsin Plaintiffs, *see id.* ¶¶ 65-76.

40.     None of these arguments are appropriate for resolution at this stage.  The Natural Gas Plaintiffs shadowbox with procedures the Court has not yet ordered.  If the Court determines that it may resolve the Claims Objection, the parties will meet and confer regarding a proposed schedule.  The Natural Gas Plaintiffs will have a full opportunity at that time to argue, for example, that the statute of limitations question should be considered at the same time as resolution of the antitrust liability question.  *See* Midwest Plaintiffs' Opening Brief ¶¶ 42-48.  But that argument has no relevance to the questions before the Court on May 31, 2018.

41.     Similarly, many of the Natural Gas Plaintiffs' arguments are simply their substantive responses to the Claims Objection.  For example, in the Claims Objection, the Debtors argue that this Court should disallow proofs of claim against GenOn where the MDL Court already dismissed claims against GenOn in the underlying litigation.  *See* Claims Objection ¶ 19.  The Natural Gas Plaintiffs interpret the MDL Court's decision differently, and contend that they do still have claims pending against GenOn in the MDL Litigation.  *See* Midwest Plaintiffs' Opening Brief ¶¶ 37-41.  The Natural Gas Plaintiffs' argument is not a reason for this Court to avoid resolving the Claims Objection; it is merely an argument to resolve the Claims Objection in their favor.  Again, these are arguments more appropriately addressed after the Court rules on this threshold issue of whether to resolve the Claims Objection at all.

42.     For these reasons, the Court should not consider any of those arguments at this time. Nonetheless, and in case this Court considers the Natural Gas Plaintiffs' irrelevant arguments at this time (it should not), the Debtors respond to each of the Natural Gas Plaintiffs' arguments, in turn, below.

**A.      The Debtors Do Not Seek Reconsideration Of The MDL Court's Personal Jurisdiction Rulings.**

43.     The Debtors do not dispute that the MDL Court has already decided whether it has personal jurisdiction over GenOn.  Rather, the Debtors dispute the effect of the MDL Court's Orders, *compare* Claims Objection ¶ 19 *with* Midwest Plaintiffs' Opening Brief ¶¶ 37-41, and the question of the effect of those orders can and should be resolved by this Court in deciding the Claims Objection.  Specifically, eight Natural Gas Plaintiffs filed Proofs of Claim against GenOn: the Wisconsin Plaintiffs and FLI.[9]  The MDL Court dismissed claims of Arandell Corp., Merrick's, Inc., Sargento Foods, Inc., ATI Ladish LLC (f/k/a Ladish Co., Inc.), and FLI, against GenOn for lack of personal jurisdiction.  *See* MDL Docket Nos. 1517, 1530; Littlefield Decl. ¶ 8, Ex. 7, ¶ 9, Ex. 8.  Those plaintiffs did not appeal that order, *In re W. States Wholesale Nat. Gas. Antitrust Litig.*, 715 F.3d 716, 724 (9th Cir. 2013), and, as a result, waived any further argument that GenOn was subject to personal jurisdiction.

44.     Although the MDL Court later denied a motion to dismiss a Third Amended Complaint for lack of personal jurisdiction, that ruling applied only to two ***other*** newly-added plaintiffs (Carthage College and Briggs Stratton Corporation) who were not parties to the Second Amended Complaint that had already been dismissed.  *See* MDL Docket No. 2416; Littlefield

---

[9]     One Wisconsin Plaintiff, Verso Minnesota Wisconsin LLC (f/k/a NewPage Wisconsin Systems, Inc.), did not name GenOn among the defendants in its operative complaint.  *See* MDL Docket No. 1952; Littlefield Decl. ¶ 11, Ex. 10.

Decl. ¶ 10, Ex. 9.  That later ruling as to the newly-added plaintiffs did not resurrect the other five Natural Gas Plaintiffs' previously dismissed claims against GenOn.

**B.      The Statute Of Limitations Can Be Addressed Before The Ultimate Question Of Antitrust Liability.**

45.      Rule 42 of the Federal Rules of Civil Procedure, incorporated by Rule 9015(a) of the Federal Rules of Bankruptcy Procedure, provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." Here, deciding the narrower question of whether the statute of limitations bars certain claims before holding a full antitrust trial on the merits potentially saves the parties and this Court time and resources, and streamlines the proceedings.

46.      The Natural Gas Plaintiffs assert that deciding the statute of limitations question separately from the liability issue is impossible because it will require evidence of fraudulent concealment, which "goes to the heart" of the alleged conspiracy.  Midwest Plaintiffs' Opening Brief ¶ 43.  But deciding that issue will not require this Court to consider at all what fraudulent concealment evidence exists, as equitable tolling hinges only on what information was available to the Natural Gas Plaintiffs, and whether it was sufficient to put them on notice of their claims. *See Pacheco v. Rice*, 966 F.2d 904, 906-07 (5th Cir. 1992) ("Equitable tolling is appropriate when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim.").

47.      Even if this Court does consider such evidence, the evidence at that hearing will still be narrower than evidence required to prove antitrust liability, which necessitates additional proof of the alleged conspiracy, acts in furtherance of it, and its effects on commerce.  *See, e.g., Defino v. Civic Ctr Corp.*, 718 S.W. 2d 505, 510 (Mo. App. 1986) (listing elements of a Section 1 Sherman Act claim, noting that the Missouri Act "directs that its provisions 'shall be construed in

harmony with ruling judicial interpretations of comparable federal antitrust statutes'") (quoting V.A.M.S. § 416.41).

48.     And because deciding that narrower issue is potentially dispositive, holding that more streamlined hearing before trying liability potentially saves the parties and this Court (and the MDL Court and Transferor Courts) substantial time and resources.  *Yung v. Raymark Indust. Inc.*, 789 F.2d 397, 401 (6th Cir. 1986) (finding separate trials on a statute of limitations issue was "particularly appropriate," and that the "procedure should be encouraged because court time and litigation expenses are minimized," noting that "whether resolution of a single issue would likely dispose of an entire claim is extremely relevant in determining the usefulness of a separate trial.").

49.     For these reasons, courts regularly bifurcate trials on the statute of limitations issue from ultimate liability trials.  *See, e.g., Young v. Mentor Worldwide LLC*, Case No. 4:17-cv-00063 (SWW), 2018 WL 2054591, at *2 (E.D. Ark. May 1, 2018) (granting motion to bifurcate the statute of limitations hearing from the trial on the merits because, although resolving the issue involved fraudulent concealment evidence, the issue "is potentially dispositive, and a preliminary trial will not consume the time and expense necessary for a trial on the merits."); *Burgess-Lester v. Ford Motor Co.*, No. 1:06CV43, 2007 WL 3088082, at *1 (N.D.W.V. Oct. 22, 2007) (granting defendant's motion to bifurcate the trial on the issue of defendant's statute of limitations defense from the trial on the merits); *Seaboard Terminals Corp. v. Standard Oil Co. of New Jersey*, 30 F. Supp. 671, 672 (S.D.N.Y. 1939) (bifurcating statute of limitations issue in an antitrust case because "an anti-trust suit . . . is usually complicated and protracted" and because "a determination of this one issue may end the entire litigation.").  This Court can and should do the same.

### C.   The MDL Court Has Not Ruled Whether The Statutes Of Limitations Bar The Natural Gas Plaintiffs' Claims.

50.   The Natural Gas Plaintiffs mistakenly argue that the MDL Court has already decided that their claims are not time barred.  *See* Midwest Plaintiffs' Opening Brief at ¶¶ 49-50. Not so.  The MDL Court merely identified a ***disputed factual issue*** as to whether the statutes bar the claims.  *See* MDL Docket No. 2957 at 19 (denying summary judgment, finding that there was "a genuine issue of material fact as to when [Natural Gas Plaintiffs] should reasonably have known of the underlying conduct in this case."); Littlefield Decl. ¶ 6, Ex. 5.  The Debtors, through the Claims Objection, now ask this Court to resolve that disputed factual issue.  *See* Claims Objection ¶ 20, n.7.  As discussed above, this Court has authority and jurisdiction to decide that issue, and nothing about the MDL Court's prior orders mandate otherwise.

### D.   The Availability Of The Full Consideration Remedy Should Be Decided Before The Parties Put On Evidence Of Damage Calculations.

51.   As with the statute of limitations issue, the particular order in which this Court hears the full consideration damages question is irrelevant to the question at hand regarding the Court's ability to hear the Claims Objection at all.  But if the Court rules it can, the availability of full consideration damages can and should be considered before hearing the ultimate merits of the Natural Gas Plaintiffs' claims.

52.   ***First***, deciding whether full consideration damages is ***recoverable*** in the first instance is different than the ***amount*** of damages that are recoverable.  Thus, it is not a "numbers issue" which this Court stated it believed should follow a liability finding.  Midwest Plaintiffs' Opening Brief ¶ 64 (quoting Mar. 30, 2018 Hr'g Tr. 16:3-4);  Littlefield Decl. ¶ 5, Ex. 4.

53.   ***Second***, a hearing on FLI and Kansas Plaintiffs' entitlement to full consideration damages is purely a legal one, and will not, as the Midwest Plaintiffs incorrectly argue, "implicate[s] all the concerns underlying a conspiracy trial."  Midwest Plaintiffs' Opening Brief

¶ 64. Both FLI and the Kansas Plaintiffs seek full consideration damages pursuant to a repealed statute, and the MDL Court already granted a motion for summary judgment dismissing claims for full consideration on this very basis. *See* MDL Docket No. 2957 at 7-10; Littlefield Decl. ¶ 6, Ex. 5; *see also* Journal Entry Memorializing Rulings on Defendants' Motion for Partial Summary Judgment at 4, *Assoc. Wholesale Grocers, Inc. v. United Egg Producers*, No. 10-cv-2171 (Kan. Dist. Ct., Wyandotte Cnty. Oct. 3, 2013) (holding repeal of the full consideration statute operated retroactively, barring the plaintiffs' claims for full consideration damages even though they were made before the repeal); Littlefield Decl. ¶ 7, Ex. 6. This Court can and should analyze that legal issue before it hears the ultimate merits of FLI and the Kansas Plaintiffs' claims.

54.    While answering the question of Wisconsin Plaintiffs' entitlement to full consideration damages might require evidence of their use of purported agents to purchase natural gas from defendants, this is a narrow factual question. It does not justify delaying a hearing on that issue until after a hearing on the ultimate merits of their claims. This Court is capable of analyzing the contracts for which Wisconsin Plaintiffs claim they are entitled to reimbursement, and determine whether those contracts were entered into through the use of agents, without considering all other evidence tied to the alleged conspiracy or the effects of that conspiracy on the market. And obtaining a ruling on that issue prior to the ultimate merits hearing can potentially narrow the scope of the evidence required at that later liability hearing. Trying the recoverability question first promotes efficiency and conservation of resources.

55.    ***Finally***, the Natural Gas Plaintiffs' assertion that the MDL Court has already decided that the Wisconsin Plaintiffs are entitled to full consideration damages, *see* Midwest Plaintiffs' Opening Brief ¶¶ 65-76, plainly misstates the MDL Court's rulings. Specifically, the MDL Court ruled on a ***motion to dismiss*** that a complaint sufficiently ***alleged*** that gas was

26

purchased directly from the defendants, *see* Ex. K to Midwest Plaintiffs' Opening Brief at 6, as required to seek full consideration damages in Wisconsin. *See In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 746 (9th Cir. 2013). And it ruled on summary judgment that a disputed issue of material fact existed as to whether agents were used to purchase gas from defendants. *See* MDL Docket No. 2957 at 15 (holding that the "evidence is unclear enough to be interpreted that way by a reasonable jury."); Littlefield Decl. ¶ 6, Ex. 5. Clearly, the MDL Court has never held, as a legal and factual matter, that the Wisconsin Plaintiffs are entitled to full consideration damages. Thus, the Debtors are not "seek[ing] to negate the MDL Court's rulings and have this Court reverse them," Midwest Plaintiffs' Opening Brief ¶ 32, but instead ask this Court to resolve a disputed factual question.

## CONCLUSION

56.     Consistent with the Bankruptcy Code, Supreme Court precedent, and routine bankruptcy court practice, the Debtors asked this Court to resolve objections to proofs of claim that, in some cases, have face values in the hundreds of millions of dollars. The Natural Gas Plaintiffs' arguments make clear why they do not ***want*** the Court to resolve the objections to their Proofs of Claim. But this is not a sufficient basis for the Court to ignore Congress's unequivocal mandate that Courts "shall" resolve claim objections. The Debtors respectfully request that this Court rule that it will resolve the Claims Objections so that it can complete its bankruptcy process in a timely and efficient manner.

Dated: May 25, 2018          /s/ Zack A. Clement
Houston, Texas               Zack A. Clement (Texas Bar No. 04361550)
                             **ZACK A. CLEMENT PLLC**
                             3753 Drummond Street
                             Houston, Texas 77025
                             Telephone:     (832) 274-7629
                             Email:         zack.clement@icloud.com

                             -and-

                             James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
                             David R. Seligman, P.C. (admitted *pro hac vice*)
                             Steven N. Serajeddini (admitted *pro hac vice*)
                             W. Benjamin Winger (admitted *pro hac vice*)
                             **KIRKLAND & ELLIS LLP**
                             **KIRKLAND & ELLIS INTERNATIONAL LLP**
                             300 North LaSalle
                             Chicago, Illinois 60654
                             Telephone:     (312) 862-2000
                             Facsimile:     (312) 862-2200
                             Email:         james.sprayregen@kirkland.com
                                            david.seligman@kirkland.com
                                            steven.serajeddini@kirkland.com
                                            benjamin.winger@kirkland.com

                             -and-

                             Mark McKane, P.C. (admitted *pro hac vice*)
                             Ashley E. Littlefield (admitted *pro hac vice*)
                             **KIRKLAND & ELLIS LLP**
                             **KIRKLAND & ELLIS INTERNATIONAL LLP**
                             555 California Street
                             San Francisco, California 94104
                             Telephone:     (415) 439-1400
                             Facsimile:     (415) 439-1500
                             Email:         mark.mckane@kirkland.com
                                            ashley.littlefield@kirkland.com

                             *Co-Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on May 25, 2018, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Zack A. Clement*
Counsel